IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

DYLAN ALLEN JEFFRIES,       )
                                    )
      Petitioner               )
                                    )
                                    )    CRIMINAL ACTION NO.: 4:15cr83
      v.                       )    CIVIL ACTION NO.: 4:17cv75
                                    )
                                    )
UNITED STATES OF AMERICA,    )
                                    )
      Respondent.            )

**RESPONSE OF THE UNITED STATES TO DEFENDANT'S**
**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

The United States of America, by and through its attorneys, Dana J. Boente, United States Attorney for the Eastern District of Virginia, and Kaitlin C. Gratton, Assistant United States Attorney, submits this Response to Defendant DYLAN ALLEN JEFFRIES's ("Jeffries") Motion to Vacate, Set Aside or Correct a Sentence pursuant to Title 28, United States Code, Section 2255. The United States respectfully requests that all relief sought be denied and that the motion be dismissed without a hearing. In support thereof, the United States submits the following points and authorities.

### I.    FACTS AND PROCEDURAL HISTORY

Jefferies came to the attention of law enforcement when a concerned parent reported inappropriate messages that Jeffries had sent via Facebook Messenger to her then thirteen-year-old daughter, Jane Doe 2. ECF 21, ¶ 3. The parent provided copies of these messages, which were sexual in nature and included graphic descriptions of proposed sexual encounters between the two. *Id.* The messages also included repeated requests for sexually explicit images of Jane Doe 2. *Id.*

In the course of their investigation, law enforcement applied for and received state search warrants for the Facebook accounts of Jeffries and Jane Doe 2. *Id.* ¶ 4. While reviewing Jeffries's Facebook account, they also identified messages of a sexual nature between Jeffries and Jane Doe 1, then no older than 12 years old. *Id.* These messages included requests for sexually explicit photographs and videos of Jane Doe 1, as well as graphic descriptions of proposed sexual encounters between the two. *Id.* ¶ 5.

On November 16, 2015, a federal grand jury returned an indictment against Jeffries, charging him with Sexual Exploitation of a Child, in violation of Title 18 U.S.C. § 2251(a) (Count One) and Coercion or Enticement in violation of Title 18 U.S.C. § 2422(b) (Counts Two and Three). ECF 1. On February 8, 2016, Jeffries pleaded guilty to Count Three of the indictment pursuant to a written Plea Agreement and Statement of Facts. ECF 20, 21. The matter was continued for  sentencing, pending the preparation of a Presentence Report ("PSR").

The PSR provided a total offense level of 36, resulting from a base offense level of 28, a two-level enhancement for use of a computer, an eight-level enhancement for an offense involving a minor under the age of twelve, a one-level enhancement for multiple counts (grouping), and a three-level reduction for acceptance of responsibility. PSR, ¶¶ 22-42. Based on his criminal history category of I, the resulting guideline range was 188 to 235 months. PSR, ¶ 84.

At sentencing, the Court sustained defendant's objection to the eight-level enhancement, resulting in a reduction of Jeffries's total offense level to 29 and an advisory guideline range of 87 to108 months, which range was restricted to the statutory minimum penalty of 120 months. *Id.* On June 24, 2016, the Court sentenced Jeffries to the mandatory minimum term of 120 months imprisonment. ECF, 35.

On July 3, 2017, Jeffries filed the instant motion and memorandum seeking to vacate, set aside or correct his sentence on the following grounds: (1) there was no interstate nexus granting this Court jurisdiction over his case; (2) his counsel was ineffective on numerous grounds; (3) the facts proved in the case failed to satisfy the elements of Title 18 U.S.C. § 2422(b); (4) to the extent that his actions violated Title 18 U.S.C. § 2422(b), the law is an unconstitutional infringement on his First Amendment right to freedom of speech; and (5) his was subject to various forms of prosecutorial vindictiveness. ECF 39. His supplemental pleading, filed on July 17, 2017, added claims that (6) he was improperly sentenced, and (7) the federal warrant to search his Facebook account violated his Fourth Amendment rights. ECF 42.

It is clear from the face of the motion and from prior proceedings in the case that Jeffries is not entitled to the relief he seeks. This court should, therefore, dismiss the petition without conducting a hearing. *See* Rules Governing Section 2255 Proceedings 4.

## II.   LEGAL STANDARD

A petitioner collaterally attacking his sentence or conviction bears the burden of proving that (1) his sentence or conviction was imposed in violation of the United States Constitution or laws, (2) the Court was without jurisdiction to impose such a sentence, (3) the sentence exceeded the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *see also Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

The scope of a § 2255 collateral attack is far more limited than an appeal, and thus a "collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). Procedural default will bar consideration under § 2255 of any matter that should have been raised at trial, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or that could have been presented on appeal but was not, unless the Jeffries demonstrates "cause" for his double procedural default and

"actual prejudice" resulting from the error. *Frady*, 456 U.S. at 167-68. Moreover, a court may grant relief under § 2255 only where the putative error is jurisdictional, constitutional, or an error of law that inherently results in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); see also *Davis v. United States*, 411 U.S. 233 (1973). To show that failure to entertain a collateral attack would result in a miscarriage of justice, the defendant "must show actual innocence by clear and convincing evidence." *United States v. Mikalajunas*, 186 F.3d 490, 493 (1999), cert. denied 529 U.S. 1010 (2000). Although the doctrine of procedural default generally bars claims not previously raised, a freestanding claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. *United States v. DeFusco*, 949 F.2d 114, 120-21 (4th Cir. 1991). *cert. denied*, 503 U.S. 997 (1992).

The government's interest in the finality of judgments warrants "stringent" application of the cause and prejudice standard. *United States v. Metzger*, 3 F.3d 756, 757 (4th Cir. 1993), cert. denied, 114 S. Ct. 1374 (1994). It is not enough to show the possibility of prejudice. The errors must have worked to a defendant's "actual and substantial" disadvantage, infecting the entire proceeding with "error of constitutional dimensions." *Frady*, 456 U.S. at 170.

### III.   PRO SE PETITIONER

A *pro se* Jeffries is entitled to have his petition and asserted issues construed liberally, because a *pro se* Jeffries is held to less stringent standards than an attorney drafting such complaints. *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978).

### IV.   DISCUSSION

In his § 2255 motion and memorandum Jeffries offers several grounds that he suggests require this Court to vacate his sentence. ECF 39, 42.

Jeffries was represented throughout the proceedings by competent and qualified counsel, Chad Dorsk. Additionally, Jefferies failed to raise several of these claims in the district court on direct appeal and, thus, these claims are procedurally defaulted under *Frady*. Further*,* the Jeffries does not claim he is actually innocent and thus, cannot claim that a "miscarriage of justice would result from the court's failure to entertain his collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). This petition should be dismissed for the reasons set forth below.

A.   **Ineffective Assistance of Counsel**

Jeffries argues that his counsel was ineffective on several grounds in violation of his Sixth Amendment right to effective assistance of counsel. ECF 39, p. 5.; ECF 42, p. 1-5. These claims lack merit and should be denied.

To prevail on a claim of ineffective assistance of counsel, Jeffries must show that counsel's actions meet the two-prong test announced in *Strickland v. Washington*. 466 U.S. 668, 687 (1984). First, Jeffries "must show that counsel's representation fell below an objective standard of reasonableness." *Bacon v. Lee,* 225 F.3d 470, 478 (4th Cir. 2000) (quoting *Strickland*, 466 U.S. 668, 688 (1984)). Petitioner's counsel is entitled to a "strong presumption" that a trial counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004) (citing *Strickland*, 466 U.S. at 689). Second, Jeffries must demonstrate prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Bacon*, 225 F.3d at 478 (citing *Strickland*, 466 U.S. at 694). In order to meet this prong, the Jeffries must show a "probability sufficient to undermine confidence in the outcome." *Roane*, 378 F.3d at 405 (citing *Strickland*, 466 U.S. at 694). A petitioner's failure to show either

of the two prongs makes it unnecessary for the Court to consider the remaining requirement. *Roane*, 378 F.3d at 404 (citing *Williams v. Kelly*, 816 F.2d 939, 946-47 (4th Cir. 1987)).

The burden is on the Jeffries to "identify acts or omissions of counsel" that are alleged to be unreasonable. *Id.* at 690. A reviewing Court must then determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland* does not require lawyers to pursue frivolous legal avenues that have no merit in order to build a record that would fend off future claims of ineffective assistance.

Moreover, a petitioner who alleges ineffective assistance of counsel following entry of a guilty plea has an even higher burden to meet. See *Hill v. Lockhart*, 474 U.S. 52, 53-59 (1985); *Fields v. Attorney General of Maryland*, 956 F.2d 1290, 1294-99 (4th Cir. 1992), *cert. denied*, 506 U.S. 885 (1992); *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988), *cert. denied,* 488 U. S. 843 (1988). In *Hooper*, the Fourth Circuit described this additional burden as follows:

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [Strickland] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, *he would not have pled guilty and would have insisted on going to trial*."

*Hooper*, 845 F.2d at 475; *see also Hill*, 474 U.S. at 59; *Fields,* 956 F.2d at 1297.

In evaluating a post-guilty plea claim of ineffective assistance, statements previously made under oath affirming satisfaction with counsel—typically, in a Rule 11 proceeding—are binding on the defendant absent "clear and convincing evidence to the contrary." *Fields*, 956 F. 2d at 1299, citing *Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977). The fact that a plea bargain is "favorable" to a defendant and that accepting it was "a reasonable and prudent decision" is itself evidence of "[t]he voluntary and intelligent" nature of the plea. *Fields,* 956 F.2d at 1299.

Here, many of the claims Jeffries provides in support of his ineffective assistance of counsel claim are simply complaints about the handling of his case. None rises to the level of being unreasonable. Rather, all fall within the wide range of reasonable professional assistance. *Roane*, 378 F.3d 404. Further, many of the statements made in his § 2255 pleadings are contrary to statements he made under oath during the Rule 11 colloquy. Jeffries fails to meet his burden of establishing that counsel acted unreasonably or that absent those actions the outcome would have been different. His claims fail under both the *Strickland* and the *Hooper* standards.

In an effort to respond to Jeffries's numerous and varied claims, the Government will group the claims as follows:

### 1.    General claims: "Faulty and incorrect information" and "Bond Issues"

Jeffries claims counsel was intimidated by the prosecution, had limited contact with him, and provided him with "faulty and incorrect information," but fails to identify what was faulty or incorrect. ECF 39, p. 5; ECF 42, p. 2. Because he fails to identify what information he is contesting, this claim cannot meet the *Strickland* standard and should be denied.

To the extent he claims counsel was ineffective concerning his request for bond, this claim also lacks merit and finds no support in the record before the Court.

According to counsel, when Jefferies first contacted him by phone, counsel believed Jefferies would be charged with possession of child pornography, an offense that does not carry a mandatory minimum sentence. *See* Affidavit of Attorney Chad Dorsk, attached hereto as "Gov't Exhibit 1." Counsel states he most likely told Jefferies he was looking at "a couple of years" if convicted of such a charge. *Id.*, p. 1. Notably, counsel made no promises as to what Jeffries could expect, "without knowing more about his case." *Id.* As counsel points out, based on what Jeffries told him during the first phone conversation, he thought Jeffries "stood a good chance of receiving

bond." Gov't Ex. 1, p. 7. However, after learning of the serious charges alleged in the indictment, counsel advised Jeffries that was no longer the case. *Id.*

Jeffries asserts counsel provided incorrect information, promised he could get bond, and did not communicate directly with him, but rather through his family. ECF 42, p. 2. None of these claims establishes that counsel acted unreasonably.

At the bond hearing held on November 20, 2015 before Magistrate Judge Krask, the Government moved for detention and proffered facts on which the Court ruled Jefferies should be detained pending trial. ECF 9. Thereafter, counsel filed a motion appealing that decision. ECF 13. This Court conducted a de novo review of Judge Krask's detention order and similarly found that Jeffries's continued detention was warranted. ECF 16. It is unclear what more counsel could have done under these circumstances. Lawyers are not required to make frivolous claims in order to ward off later challenges on ineffective assistance grounds. This claim, thus, fails under *Strickland* and should be denied.

Further, while Jeffries claims counsel only communicated through his father and sister, he fails to establish how counsel was ineffective on this ground given that counsel communicated with Jeffries's family at his request.

The Rules of Professional Conduct in Virginia state that :

"a lawyer shall (1) keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information; (2) explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation; and (3) inform the client of facts pertinent to the matter and of communications from another party that may significantly affect settlement or resolution of the matter."

Va. Sup. Ct. R. pt. 6, sec. II, 1.4.

Counsel does not dispute that he communicated with family members. In fact, counsel states this was Jeffries's preferred method of communication and meetings with Jeffries were only done when absolutely necessary. Gov't Ex. 1, p. 2. (detailing Jeffries's requests regarding communication with counsel). And, even while following Jeffries's specific requests regarding their communication, counsel nevertheless "met with or otherwise counseled" Jeffries "on at least 13 separate occasions," in addition to the many hours he spent meeting with Jeffries's family members to answer questions. *Id.* Counsel's description of his communications with Jeffries and his family is supported by the emails he received from Jeffries's sister. *Id.* (attachments). Accordingly, Jeffries fails to establish counsel acted unreasonably and his claims fail under *Strickland.*

### 2.    *Plea Agreement and Cooperation*

Jefferies asserts several claims regarding his counsel's alleged ineffectiveness in negotiating the terms of his plea to Count Three.  These claims find no support in the record and are factually incorrect.

As a threshold matter, Jeffries's complaints regarding counsel's performance at this stage of the proceedings are belied both by counsel's sworn affidavit and by Jeffries's own sworn statements at his Rule 11 hearing. Counsel discussed with Jefferies the benefits of pleading guilty and, according to Counsel, Jefferies was interested in cooperating with the United States. Gov't Ex. 1, p.5. After Counsel successfully negotiated a favorable plea agreement, Jefferies pleaded guilty freely and voluntarily to Coercion or Enticement of a Minor. Jeffries never sought to withdraw his plea prior to or after sentencing. During the Rule 11 colloquy, Jeffries confirmed that he was satisfied with counsel and that counsel had fully considered all the facts and possible defenses. Plea Hearing Transcript, (Hereinafter "PHT"), p. 16-17. Further, when the Court asked

if he had read, signed, and fully discussed the contents of the Plea Agreement with counsel, Jeffries responded, "Yes, sir." PHT, p. 12. Both Jefferies and counsel confirmed their understanding and acceptance of the agreement and its term. PHT, p. 13. Both affirmed that they had signed and initialed each page to indicate the same. *Id.* After sentencing, Jeffries and his family again retained counsel to pursue a substantial assistance motion and counsel then engaged in discussions with the Government regarding such a motion. Gov't Ex. 1, p. 5.

Jeffries's claim that counsel failed to get cooperation language in the Plea Agreement is without merit. ECF 42, p. 3. The original plea offer did not contain the cooperation language. When counsel specifically requested the inclusion of such language, the United States agreed to include several paragraphs reflecting its standard agreement with cooperating defendants. Gov't Ex. 1, p. 4; ECF 20 ¶¶ 11-15, 20. Contrary to Jeffries's claims, that language does not entitle him to a sentencing reduction under Rule 35(b).  Rather, it clearly reserves to the United States "the right to seek . . . any reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure, *if, in its sole discretion*, the United States determines that such a departure or reduction is appropriate. ECF 20 ¶ 15 (emphasis added); *see also id.* ¶ 20 (exempting from the proceedings established therein "the decision of the United States whether to file a motion based on 'substantial assistance' as that phrase is used in Rule 35(b) of the Federal Rules of Criminal Procedure and Section 5K1.1 of the Sentencing Guidelines and Policy Statement," in light of the defendant's "agree[ment] that the decision whether to file such a motion rests in the sole discretion of the United States"). At the Rule 11 hearing, Jeffries confirmed under oath that he had reviewed, signed, and initialed each page of the Plea Agreement and had agreed to and understood its terms. PHT, p. 12-13.

To the extent Jeffries asserts that he was somehow entitled to specific language guaranteeing a reduction of his sentence, he is mistaken. The United States did not and would not have agreed to guarantee the defendant such a reduction. *See Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("To establish *Strickland* prejudice . . . [i]n the context of pleas[,] a defendant must show the outcome of the plea process would have been different with competent advice.").  Jeffries cannot show counsel's actions were unreasonable in light of the fact that counsel negotiated the inclusion of the only cooperation provisions available to Jeffries and those provisions make clear that the decision to seek a reduction of Jeffries's sentence for substantial assistance remains in the exclusive dominion of the United States. Therefore, this claim should be denied.

Next, Jeffries claims counsel was ineffective for failing to bring his *potential* assistance to the attention of the sentencing Judge. ECF 42, p. 3. In light of the circumstances at the time, counsel is entitled to a "strong presumption" that this was sound trial strategy. Jeffries had not yet been debriefed and counsel had no way of knowing the value, if any, of the information Jeffries might provide. Further, counsel denies that he ever promised a specific reduction of his sentence. Gov't Ex. 1, p. 8-9. Instead, he affirms that Jeffries and his family were upset when told counsel "could not make any specific promises regarding either the sentence that would be rendered or the possibility of a sentence reduction based on substantial cooperation." Gov't Ex. 1, p. 9. Therefore, this claim should also be denied.

Regarding Jefferies's claim that he was threatened or coerced into entering into the Plea Agreement by his counsel, this claim lacks merit and is factually incorrect. ECF 42, p. 5. As counsel points out, a plea offer was made on January 10, 2016, which was set to expire five days later. Gov't Ex. 1, p. 4. The Government reserved the right to return to the grand jury to pursue any and all additional charges and conveyed that information to counsel in the written plea offer.

11

*Id.* (attachments).According to counsel, Jefferies was very interested in cooperating with the Government. Gov't Ex. 1, p. 5. For that reason, counsel negotiated the addition of cooperation language to the Plea Agreement and Jeffries proceeded to plead guilty to Count Three. *Id.;* ECF 20, ¶¶ 11-15, 20.

    When specifically asked during his Rule 11 hearing whether he had been threatened or coerced into pleading guilty, Jeffries swore under oath that he had not:

THE COURT:      Has anyone threatened you in any way or forced you to plead guilty in this case.

PETITIONER:     No, Your Honor.

PHT, p. 16. Similarly, when asked whether he had been induced to plead guilty by any promise not contained in the written plea agreement, Jeffries swore that he had not:

THE COURT:      Has anyone, including your attorney or the United States Attorney made any promise of leniency or any promise of any kind other than the promises contained in that written agreement that's in front of you?

PETITIONER:     No, Your Honor.

*Id.*

    There is simply no merit to this claim. It fails under *Strickland* and should be denied.

    ### 3.    *Psychological Evaluation*

    Jeffries next alleges counsel did not honor his request for a "psychological evaluation to determine the likelihood" that Jeffries would act on his intent. ECF 42, p. 3-4. Jeffries asserts that "this eliminated petitioner's evidence for a 'hot air' defense." *Id.* This claim is without merit and should be denied.

    As a threshold matter, counsel had no responsibility to accede to Jeffries's request that he obtain a psychological evaluation for Jeffries. *See Strickland*, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be

considered sound trial strategy. There are countless ways to provide effective assistance in any given case." (internal quotations omitted)); *cf. Noland v. French*, 134 F.3d 208, 217 (4th Cir. 1998) ("[T]he defense presented no expert witness to testify that [the defendant] was insane at the time of the murders. . . . The decision not to find such an expert, however, was a deliberate trial strategy by defense counsel.").

A "hot air" defense, as outlined by Judge Posner in *United States v. Gladish*, serves to show that a defendant's *attempt* to commit a violation under 18 U.S.C. § 2422(b) was a substantial step, and not mere words. *United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008). Jeffries, however, was not charged with attempt. He was charged with *actually* enticing a minor to engage in illegal sexual activity. The Virginia Code specifically prohibits any person from proposing to a "child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361."  Va. Code Ann. § 18.2-370(A)(4). Jeffries's messages to Jane Doe 1, therefore, were not the mere "hot air" with which Judge Posner was concerned. They did not contemplate the crime, rather they completed it. In that light, counsel's decision not to obtain a psychological evaluation for Jeffries was not just a *deliberate* trial strategy—it was a *good* one. *Strickland* does not require lawyers to pursue frivolous legal avenues that have no merit in order to build a record that would fend off future claims of ineffective assistance. Therefore, this claim should be denied.

### *4.    Sentencing*

Jeffries next claims counsel was ineffective for failing to recommend a sentence below the statutory minimum and for failing to file a motion for a downward departure. ECF 42, p. 4. Generally, Jeffries asserts there were mitigating factors that could have gotten him a lower sentence. There is simply no merit to this claim.

At his Rule 11 hearing, Jefferies was advised he that faced a maximum sentence of life and a mandatory minimum sentence of ten years in prison. PHT, p. 17. Magistrate Judge Krask specifically advised Jeffries that the sentencing Judge could impose a sentence up to the maximum but not less than the mandatory minimum. *Id.* Jeffries affirmed his understanding of the sentence that he would face by pleading guilty to Count Three. *Id.*

Further, he confirmed he had discussed his case and the advisory sentencing guidelines with counsel and that he understood that, if any prediction his counsel had made regarding his sentence proved to be inaccurate, he could not withdraw his plea based on that ground. PHT, pgs. 18-21.

Upon completion of the PSR, counsel filed objections, which he then successfully argued at sentencing. As a result, petitioner's advisory guidelines were reduced from 188 to 235 months, down to 87 to 108 months, which range was then restricted by statute to a term of 120 months. Both the United States and counsel argued for the mandatory minimum sentence. There was no reason for counsel to file a motion, or argue, for a sentence below the statutory mandatory minimum. Such a motion would have been frivolous. Jeffries pleaded guilty to violating Title 18 U.S.C. § 2422(b), and affirmed his understanding of the mandatory minimum sentence at the time of the plea. Therefore, this claim fails under *Strickland* and *Hooper.*

### 5.    *Elements*

Jeffries next claims his counsel failed to fully explain the elements of the offense charged in Count Three. ECF 42, at 5. This claim also lacks merit.

At the start of the Rule 11 hearing, Jeffries confirmed he had read the indictment. PHT, p. 6. The Court then reviewed the elements necessary to convict him of the offense set forth in Count Three. *Id.* At the conclusion, the Court asked, "[d]o you understand the elements that the United

States would have to prove to convict you of that charge in count three beyond a reasonable doubt?" He responded, "Yes, sir." PHT, p. 6-7. Jeffries similarly affirmed that he had "fully discuss[ed] the charges in the three counts and the forfeiture count with [his] attorney, Mr. Dorsk." *Id.*, p. 6. Further, as he did at the Rule 11 hearing, counsel confirms that he reviewed the elements of Count Three with the Jeffries and, that "all the parties agreed prior to the guilty plea and finding of guilty that the elements needed for conviction were met." Gov't Ex. 1, p. 10.

Jeffries's affirmative responses under oath belie the claims he now makes. He also fails to show he was prejudice by counsel's actions and thus, this claim fails under *Strickland.*

### *6.        Appeal*

Finally, Jeffries claims counsel was ineffective for advising him not to file an appeal. ECF 42, p. 5. However, Jeffries did, indeed, waive his right to appeal in the Plea Agreement. ECF 20, ¶ 6. He never sought to withdraw his plea agreement and, thus, he cannot show counsel acted unreasonably in advising him not to appeal. Gov't Ex. 1, p. 10; ECF 20, ¶ 6; PHT, p. 21. This claim fails under *Strickland*.

### B.        **Procedurally Defaulted Claims**

In addition to his ineffective assistance of counsel claims, Jeffries raises a number of additional claims for the first time on collateral review. Because Jeffries failed to raise these claims in the district court or on direct appeal, they are procedurally defaulted under *Frady*. Without waiving its right to assert Jeffries's default as a bar to the relief he seeks, the United States nevertheless addresses each claim in turn.

1.    *Federal Jurisdiction*

Jeffries claims for the first time that the United States failed to establish an interstate nexus sufficient to bring his conduct under federal jurisdiction.[1]  ECF 39, p. 4; ECF 42, p. 1. Citing an unpublished Fifth Circuit case, Jeffries argues that "'[t]he use of the internet alone is insufficient to establish [the required] interstate nexus.'"  ECF 39, p. 4 (quoting *United States v. Biyikliogu*, 652 F. App'x 274, 280 (5th Cir. 2016) (internal citations omitted). In fact, as Jeffries acknowledged in his Plea Agreement, this "Court has jurisdiction and authority" over this matter. ECF 20, ¶ 5.

As a threshold matter, Jeffries has defaulted this claim by failing to raise it in the district court or on appeal, instead raising it for the first time here. Jeffries offers no "cause" for or "actual prejudice" resulting from his failure to raise the claim in the trial court or on direct appeal. It should, therefore, be denied. *Frady,* 456 U.S. at 167-68. Even if Jeffries had not procedurally defaulted this claim, it lacks merit and should be denied.

Jeffries's assertion that "the federal courts cannot be courts of general jurisdiction" is correct. *Id.* "For nearly two centuries it has been 'clear' that, lacking a police power, 'Congress cannot punish felonies generally.'" *Bond v. United States*, 134 S. Ct. 2077, 2086 (2014) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 428 (1821)). However, Congress may properly regulate "'persons or things in interstate commerce.'" *Taylor v. United States*, 136 S. Ct. 2074, 2080 (2016) (quoting *United States v. Lopez*, 514 U.S. 549, 558–559 (1995)).

Jeffries also correctly quotes the Fifth Circuit standard articulated in *Biyikliogu*, a money laundering case, that "[t]he use of the internet alone is insufficient to establish the required

---

[1] In "**GROUND ONE**" of his § 2255 petition, Jeffries also cites to *United States v. Clarke*, 842 F.3d 288 (4th Cir. 2016), and argues that "[t]he government must prove beyond a reasonable doubt that (1) I had culpable intent to commit the crime, (2) that I took steps toward completion of crime. Of which I did not do." ECF No. 39, p. 4. Because this argument appears to be more properly classified as a claim that the government has failed to prove all elements of the crime beyond a reasonable doubt, it is addressed in section IV(B)(2) of this response.

interstate nexus."  652 F. App'x at 280.  However, in *United States v. Barlow*, a Fifth Circuit case arising from the defendant's conviction under 18 U.S.C. § 2422(b), the court reiterated its prior holding "that transmitting photographs via the Internet is 'tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce.'"  *United States v. Barlow*, 568 F.3d 215, 221 n.18 (5th Cir. 2009) (citing *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002)). The Fourth Circuit has similarly held that "'[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce.'"  *United States v. White*, 2 F. App'x 295, 298 (4th Cir. 2001) (quoting *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997)) (unpublished).

When he pleaded guilty, Jeffries agreed to facts sufficient to establish this Court's jurisdiction. First, Jeffries agreed in his Statement of Facts to sending explicit messages and images to at least two minors via the Internet. *See White*, 2 F. App'x at 298.  Second, and even more compelling, Jeffries agreed that he used his Facebook accounts to send and receive these messages and that such "messages are transferred among Facebook, Inc. users over the Internet through Facebook, Inc. servers, which are located outside the Commonwealth of Virginia." ECF 21,  ¶  1. Thus, the Court's jurisdiction was not derived from "[t]he use of the internet alone," *Biyikliogu*, 652 F. App'x at 280, but rather from Jeffries's transmission of explicit messages and images to Jane Does 1 and 2 via the Internet and, specifically, from his computer then located within the Eastern District of Virginia through Facebook servers located outside the Commonwealth of Virginia. *See, e.g.*, *United States v. DeFoggi*, 839 F.3d 701, 712-713 (8th Cir. 2016) (affirming the existence of an interstate nexus sufficient to sustain a conviction of accessing child pornography where defendant accessed and downloaded images from a website, finding that his use of the internet in this manner "is enough in this case to satisfy the interstate commerce nexus," and that,

"[e]ven if it were not, . . . [t]he server that hosted the data that comprised the PedoBook website was located in Nebraska," a fact that permitted a reasonable trier of fact to find that the defendant, located in Maryland, had "access[ed] data that was stored on and had traveled from a server located in Nebraska" and, thus, had "accessed the website with the intent to view child pornography that had been transported using a means or facility of interstate commerce"). Thus, when he pleaded guilty, Jeffries explicitly agreed to facts establishing the Court's jurisdiction over his conduct. Accordingly, this claim should be denied.

**2.      *Elements of Coercion and Enticement***

Jeffries next argues that the Statement of Facts to which he agreed when he pleaded guilty does not sufficiently establish the requisite elements of coercion or enticement under 18 U.S.C. § 2422(b). By not raising this issue at trial or showing that it could have been raised on appeal, Jeffries has procedurally defaulted on this claim. Jeffries offers no "cause" for or "actual prejudice" resulting from his failure to raise the claim below. It should, therefore, be denied. *Frady,* 456 U.S. at 167-68. Even if Jeffries had not procedurally defaulted it, this claim lacks merit and should be denied.

Jeffries claims that the stipulated facts fail to demonstrate (1) that he knowingly committed the crime, (2) that he took a substantial step towards completing the crime, and (3) that he did not alter Jane Doe 1's mindset or subvert her will. However, Jeffries acknowledged in the Statement of Facts that was filed at the time of his guilty plea and incorporated into his Plea Agreement that he knowingly sent lascivious messages to Jane Doe 1 in contravention of Va. Code Ann. § 18.2-370(A)(4) (2017) and Title 18 U.S.C. 2422(b).

Jeffries relies on *United States v. Clark*, arguing that the government has failed to prove his culpable intent or that he undertook substantial steps to commit the crime. *Clark* 842 F.3d 288 (4th Cir. 2016). Title 18 U.S.C. § 2422(b) provides that

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

The language that Jeffries quotes from *Clark* dealt with defendants who had been charged with *attempting* to entice minors into illegal sexual activity. *Clark*, 842 F.3d at 297 (quoting *United States v. Engle*, 676 F.3d 405, 419-20 (4th Cir. 2012)) ("If the defendant is charged with attempt, 'the government must prove beyond a reasonable doubt, that (1) he had culpable intent to commit the crime and (2) he took a substantial step towards completion of the crime that strongly corroborates that intent.'").

In Count Three of the indictment returned against him, Jeffries was charged with *actually* enticing a minor to engage in illegal sexual activity. ECF 1, p. 3. In order to convict a person of actually enticing a minor, "'the government must prove that the defendant: (1) used a facility of interstate commerce; (2) to knowingly entice or attempt to entice any person under the age of 18; (3) to engage in illegal sexual activity.'" *Id.* (quoting *Engle*, 676 F.3d at 411-12). The Statement of Facts sufficiently and clearly establishes each of these essential elements, as Judge Krask found at the conclusion of Jeffries's Rule 11 hearing. PHT, p. 26.

   (i)   *Facility of interstate commerce*

As addressed in the Government's argument in section IV(B)(1) of this response, supra, Facebook messenger is unequivocally a facility of interstate commerce, as Jeffries himself acknowledged in the Statement of Facts filed with his guilty plea. ECF 21, ¶ 1.

*(ii)   Knowingly entice*

Similarly, Jeffries acknowledged in the signed Statement of Facts "that his participation in the events described was undertaken knowingly, intentionally, and unlawfully and not as a result of an accident, mistake, or other innocent reason." ECF 21, ¶ 17. Even without this acknowledgement, however, Jeffries's actions sufficiently demonstrate that he acted knowingly. *See United States v. Brinson*, 772 F.3d 1314, 1327 (10th Cir. 2014) (holding that Facebook messages between the defendant and the victim were sufficient to show the defendant "was using the internet to knowingly entice [the victim] (a minor) into the prostitution trade"); *see also United States v. White*, 636 F. App'x 890, 893 (finding sufficient evidence that defendant had attempted to entice a minor into having sex with him where he knew her age, exchanged several messages with her suggesting sex, and arranged a meeting).

Jeffries was aware that Jane Doe 1 was a minor when he sent her explicit Facebook messages, including an image his exposed and erect penis. ECF 21, ¶¶ 5-9. In those messages, he described how he wanted to perform various sexual acts with her, encouraged her to engage in sexual behaviors, and asked her to send him sexually explicit photos and videos. *Id.* In the midst of such exchanges, Jeffries discussed Jane Doe 1's approaching thirteenth birthday and shared a countdown to her birthday in April 2015. *Id.*, ¶ 6.   Therefore, Jeffries clearly acted knowingly when he enticed Jane Doe 1 to engage in the explicit exchanges detailed in his Statement of Facts.

*(iii)   Illegal sexual activity*

Although not squarely addressed in Jeffries's motion, the conduct that Jeffries enticed Jane Doe 1 to commit was, in fact, illegal. Va. Code Ann. § 18.2-370(A)(4) specifically prohibits any person from proposing to a "child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361."   In his

messages with Jane Doe 1, a "child" under the terms of the statute,[2] Jeffries repeatedly proposed sexual intercourse and fellatio. *Id.* Jeffries's conduct therefore was illegal sexual activity.

In reviewing § 2422(b), the Fourth Circuit has expressly recognized that the statute "criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions concerning the actual consummation of sexual activities with the minor.'" *United States v. Fugit*, 703 F.3d 248, 255 (4th Cir. 2012) (quoting *United States v. Engle*, 676 F.3d 405, 419 (4th Cir. 2012)). Indeed, "[t]he primary evil that Congress meant to avert by enacting § 2422(b) was the psychological sexualization of children." *Id.* This is an "evil [that] can surely obtain in situations where the contemplated conduct does not involve interpersonal physical contact." *Id.* Thus, the conduct in which Jeffries engaged is "a criminal offense" for which he could have been charged, one that falls squarely within the ambit and intent of the statute to which he pleaded guilty. *See* 18 U.S.C. § 2422(b).

### 3.    *Freedom of Speech*

Jeffries claims that to the extent that his conduct violated Title 18 U.S.C. § 2422(b), the statute is an unconstitutional infringement on his First Amendment right to freedom of speech. ECF 41, p. 8. Jeffries failed to raise this claim in the trial court or on direct appeal and has therefore procedurally defaulted it. Jeffries offers no "cause" for or "actual prejudice" resulting from his failure to raise the claim below. It should, therefore, be denied. *Frady,* 456 U.S. at 167-68. Additionally, by pleading guilty to Count Three, Jeffries "waive[d] all nonjurisdictional defects in the proceedings conducted prior to the entry of the plea." *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010); *see also Blackledge v. Perry*, 417 U.S. 21, 29-30 (1974) ("[W]hen a criminal defendant enters a guilty plea, he may not thereafter raise independent claims relating to

---

[2] Va. Code Ann. § 18.2-370(A) defines a child as any person "under the age of 15 years."

the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Rather, a person complaining of such antecedent constitutional violations is limited ...to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." (internal quotation marks and citations omitted)). Nevertheless, this claim is baseless and should be denied.

Similar claims have been considered and rejected by the First, Fifth, Sixth, and Eleventh Circuits. *See United States v. Howard*, 766 F.3d 414, (5th Cir. 2014) ("'Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime.'") (quoting *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004)); *United States v. Hart*, 635 F.3d 850, 857 (6th Cir. 2011) ("[A] defendant 'does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts.'") (quoting *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000)); *United States v. Dwinells*, 508 F.3d 63, 71-72 (1st Cir. 2007) ("[T]here is no realistic danger that section 2422(b), as we have interpreted it, criminalizes protected speech. Speech intended deliberately to encourage minors' participation in criminal sexual conduct has no redeeming social value and surely can be outlawed."). *Cf. New York v. Ferber*, 458 U.S. 747, 757 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."). The messages that Jeffries sent to Jane Doe 1, encouraging her to engage in sexual intercourse with him and to send him nude photos and videos, are simply not speech protected by the First Amendment.

Notably, the Fourth Circuit has also rejected similar claims concerning other statutes that proscribe similar conduct. *See, e.g.*, *United States v. Battles*, 2017 U.S. App. LEXIS 10210 *4 (4th

Cir. 2017) (holding that the First Amendment does not protect images depicting child pornography produced in contravention of Title 18 U.S.C. § 2251(a) where the child knowingly produces the images himself because "the government 'may legitimately protect children from self-destructive decisions reflecting . . . youthful poor judgment'") (citing *United States v. Malloy*, 568 F.3d 166, 175 (4th Cir. 2009)); *United States v. Whorley*, 550 F.3d 326, 337 (4th Cir. 2008) (holding that obscene cartoon depictions of fake children violate Title 18 U.S.C. § 1466A(1)(a) and are not protected by the First Amendment because the Supreme Court held in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) that "obscenity in any form is not protected by the First Amendment"). Therefore, this claim should be denied.

**4.      *Prosecutorial Vindictiveness***

Jeffries next claims that he was subject to a vindictive prosecution based on the prosecutors' personal feelings and potential personal gain. Jeffries failed to raise this claim in the trial court or on direct appeal and has therefore procedurally defaulted it. Jeffries offers no "cause" for or "actual prejudice" resulting from his failure to raise the claim below. It should, therefore, be denied. *Frady*, 456 U.S. at 167-68.  Nevertheless, this claim lacks merit and should be denied.

Jeffries points to three purported examples of vindictiveness in support of this claim. Each is meritless. First, Jeffries claims that the "prosecution indicted Jeffries with a baseless charge of [e]xploitation of a [m]inor" and that the prosecutors used "coercive tactics to convince Jeffries to plead to the lesser charge of [c]oercion of a [m]inor which was also a fraudulent charge." ECF 42, p. 5. Second, Jeffries claims that the prosecutors showed "bad faith by arguing fervently over a baseless 8 point enhancement" after agreeing to recommend a minimum sentence at the sentencing hearing. *Id.*, p. 6. Third, Jeffries claims that the prosecutors improperly sought the "most serious penalty" against him. ECF 39, p. 7. Finally, Jeffries claims that the prosecutors

showed bad faith in refusing to grant a Rule 35(b) motion for reduction of his sentence. ECF 42, p. 6.

Under Fourth Circuit precedent, when a defendant asserts a claim of prosecutorial vindictiveness, the "defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001) (citing *United States v. Goodwin*, 457 U.S. 368, 380 n.12 (1982)). Under this test, the "charges must be brought 'solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion.'" *Id*. (citing *Goodwin*, 457 U.S. at 380 n.12). This standard imposes a "heavy burden" on a defendant. *Id*. at 316.

Jeffries never asserts that he can meet the above test. Indeed, he cannot, as each of the specific claims he raises—the prosecutors' charging decisions, their sentencing arguments, and their decision not to seek a reduction of Jeffries's sentence under Rule 35(b)—are clearly proper exercises of prosecutorial discretion. And, Jeffries fails to explain why they are not. Indeed, Jeffries makes no claim that the prosecutors' exercised their discretion because of his decision to exercise a constitutional right or because of some unconstitutional motive, such as his race or religion. *See, e.g. Wade v. United States*, 504 U.S. 181, 185 (1992). Instead, Jeffries seems to urge that, viewed collectively, the prosecutors' exercises of discretion in his case should give rise to a presumption of vindictiveness. But, to invoke a presumption of vindictiveness, "a defendant must show that the circumstances 'pose a realistic likelihood of 'vindictiveness.''" *Wilson*, 262 F.3d at 314 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)). Moreover, as the Fourth Circuit has explained, "such a presumption is warranted only when circumstances warrant it for all cases of the type presented." *Wilson*, 262 F.3d at 315 (citing *Goodwin*, 457 U.S. at 381).   This requirement that the presumption

must be warranted in all cases of the type presented is stringent, and several factors are relevant in this case to assessing whether Jeffries has shown that such a presumption is warranted "for all cases of the type presented."

First, any presumption that Jeffries claims of vindictiveness must overcome a separate presumption of regularity in the executive branch's charging decisions. Under settled law, "a prosecutor's charging decision is presumptively lawful." *Wilson*, 262 F.3d at 315 (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). "[T]he presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id*.

Second, the Supreme Court and the Fourth Circuit have been especially deferential toward a prosecutor's pretrial charging decisions and that is even more true in a case like this where charging decisions are made before any adverse court ruling. As the Fourth Circuit has explained, "Because the presumption of vindictiveness must be applicable to all cases presenting the same circumstances, it will rarely, if ever, be applied to prosecutors' pretrial decisions." *Wilson*, 262 F.3d at 315 (citing *Goodwin*, 457 U.S. at 381).

Third, the Supreme Court has recognized that, in seeking that justice is done, a prosecutor must ensure "that guilty shall not escape" and "may prosecute with earnestness and vigor—indeed, he should do so." *Berger v. United States*, 295 U.S. 78, 88 (1935). Although a prosecutor is "not at liberty to strike foul" blows, a prosecutor "may strike hard blows," for it is a prosecutor's "duty" to "use every legitimate means to bring about a just" conviction. *Id*.

Finally, a prosecutor's decision not to file a Rule 35(b) motion is subject to review only when "(1) the prosecutor's discretion to file has been superseded by an agreement on the Government's behalf to file a Rule 35 or (2) the prosecutor's refusal to file is unconstitutional."

*United States v. Davis*, No. CRIM.A 2:96cr00053, 2006 WL 4473452, at *1 (E.D. Va. May 18, 2006) (citing *Wade v. United States*, 504 U.S. 181, 185 (1992)). "[A] claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive." *Wade*, 504 U.S. at 186 (collecting cases). Instead, a defendant is required to make a "substantial threshold showing" that "the prosecutor's refusal to move was not rationally related to any legitimate Government end." *Id.*

Jeffries came to the attention of law enforcement following a thorough investigation by local police and the Federal Bureau of Investigation. He has offered no evidence of genuine animus and has failed to make any showing that a presumption of vindictiveness is warranted for all cases of his type.

To Jeffries's first claim that the prosecutors charged him with "baseless" crimes, Jeffries's actions clearly meet the elements for the offenses with which he was charged. And, Jeffries has failed to allege *any* facts sufficient to overcome the presumption of regularity that applies to prosecutors' charging decisions. *Wilson*, 262 F.3d at 315.

The elements of the offenses charged in Counts Two and Three are addressed in section IV(B)(2), supra. *See* ECF 21, ¶¶ 8-10. Count One charged Jeffries with attempted sexual exploitation of a child for the purpose of producing a visual depiction, in violation of 18 U.S.C. § 2251(a), based on his solicitation of Jane Doe 1 to produce and transmit a video of herself engaging in sexually explicit conduct. This charge contains three essential elements: (1) the victim was less than 18 years old; (2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (3) the Defendant knew or had reason to know that such visual

depiction would be mailed or transported across state lines or in foreign commerce or would be was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2251(a); *see also United States v. Malloy*, 568 F.3d 166, 169 (4th Cir. 2009). The Statement of Facts to which Jeffries agreed set forth facts sufficient to sustain his conviction of the offense charged in Count One. Specifically, Jeffries agreed that Jane Doe 1 was less than 18 years old when he attempted to persuade her to produce and send to him via Facebook a video of herself masturbating. ECF 21, ¶¶ 4-5. Such a video would certainly have been a visual depiction of a minor engaged in sexually explicit conduct, which is defined to include "actual or simulated . . . masturbation." 18 U.S.C. § 2256. Jeffries also agreed that he communicated with Jane Doe 1 through Facebook messages and that such messages are transmitted through Facebook servers located outside the Commonwealth of Virginia. ECF 21, ¶¶ 1, 5. And, immediately following his request for the video at issue, Jeffries sent Jane Doe 1 a Facebook message including a photograph of an adult male holding his exposed and erect penis, thereby underscoring his desire to receive the requested video through the same platform. ECF 21, ¶ 5. As outlined in section IV(B)(1), *supra*, the production and transmission of the requested video via Facebook certainly involved transmissions across state lines. Because Jeffries agreed to facts sufficient to sustain his conviction for each of the charged offenses, his claim that such charges were "baseless" lacks merit and should be denied. ECF 42, p. 5.

Relatedly, the agreed resolution of Jeffries's case further belies his claim that he was subject to vindictive prosecution. In addition to Count Three, Jeffries was charged in Count One with the attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), a charge that carries a mandatory minimum penalty of 25 years imprisonment. The United States agreed to

resolve the matter to Count Three, which carried a lesser penalty, and dismiss the most serious offense charged. Thus, not only were the prosecutors' charging decisions appropriate exercises of their discretion, the agreed resolution of the case also undercuts Jeffries's claims that the prosecutors acted out of personal animus.

Jeffries's second claim, that the prosecutors acted in bad faith by arguing for enhancement, is also meritless. The PSR applied the 8-level enhancement based on a statement obtained from Jane Doe 1 that she had transmitted explicit images to Jeffries, at his request, when she was 10 or 11 years old. PSR ¶¶ 14-15. The prosecutors argued in favor of the enhancement, based on the same statement. The Government denies any arguments were made in bad faith. After a lengthy hearing on May 10, 2016, the Court sustained Jeffries's objection to the enhancement's application. Sentencing Hearing Transcript ("SHT"), p. 7-8. Although the Court held its ruling in abeyance pending a status report from the parties, the Court ultimately adopted that ruling at Jeffries's sentencing hearing on June 24, 2016, without objection from either party. *Id.*, p. 13.

The only basis on which Jeffries rests his claim of bad faith is his view that prosecutors had "agreed to recommend a minimum sentence at [his] sentencing hearing." ECF 42, p. 6. In fact, the prosecutors made no such agreement. Jeffries's Plea Agreement is devoid of any sentencing recommendation or, indeed, any agreement to make such a recommendation. And that Plea Agreement included an integration clause that explicitly provided that it "constitute[d] the complete plea agreement between the United States, the defendant, and the defendant's counsel." ECF 20, ¶ 21. By signing the Plea Agreement, Jeffries and counsel explicitly "acknowledge[d] that no threats, promises, or representation ha[d] been made, nor agreements reached, other than those set forth in writing in this plea agreement, to cause the defendant to plead guilty." *Id.* The prosecutors never agreed, as Jeffries now asserts, to recommend a specific sentence in his case.

Accordingly, their decision to argue in favor an enhancement contained in the PSR was not in bad faith.

As to Jeffries's claim that the prosecutor sought to impose the "most serious penalty," after the Court sustained Jeffries's objection to the enhancement at issue and revised his advisory guideline range to the restricted mandatory minimum term of 120 months, the prosecutors argued for that sentence. Therefore, Jeffries's sentence cannot be attributed to prosecutorial vindictiveness, since the charge carried a mandatory minimum sentence and that is the sentence the United States ultimately sought. As noted above, this sentence is significantly less than the mandatory minimum penalty Jeffries would have faced if convicted of Count One, a charge the United States agreed to dismiss in exchange for Jeffries's plea of guilty to Count Three.

Finally, Jeffries claims that the prosecutors acted vindictively by failing to file a motion pursuant to Federal Rule of Criminal Procedure 35(b). The United States did not agree to file such a motion. Rather, Jeffries's Plea Agreement provided that "the *United States reserves the right* to seek any departure from the applicable sentencing guidelines…or any reduction of sentence pursuant to Rule 35(b)." ECF 21, ¶ 15 (emphasis added). That the prosecutors chose not to seek a downward departure or reduction of sentence does not rise to the level of bad faith, because there was never a promise or agreement that the prosecutor would do so. Nor does Jeffries's allege that the prosecutors refused to file such a motion for an unconstitutional reason. *See Wade*, 504 U.S. at 185-86. At best, Jeffries complains that, in his view, he provided substantial assistance that should have entitled him to a sentence reduction under Rule 35(b). But, Jeffries cannot subject the prosecutors' decision not to move for such a reduction to judicial review by merely by claiming that he provided such assistance. *Id.* at 186. Because Jeffries has failed to make the "substantial threshold showing" that the prosecutors' "refusal to move was not rationally related to any

legitimate Government end," he is not entitled to relief. This fact is underscored by the emails attached to Mr. Dorsk's affidavit, which clearly show that attorneys other than the prosecutors assigned to Jeffries's case determined that the information that Jeffries had provided—and on which he rests his claim for relief—did not substantially assist the United States. Gov't Ex. 1 (attachments).

For all of the foregoing reasons, Jeffries's claim of prosecutorial vindictiveness are meritless and should be denied.

### 5. *Improper Sentencing*

#### (i) *Use of a Computer Enhancement*

Jeffries claims that the guideline enhancement for use of a computer is impermissible double jeopardy, because the statute under which he was convicted required his use of a facility or means of interstate commerce, which was defined as use of a computer. ECF 42, p. 7. Jeffries failed to object to the application of this enhancement at sentencing and or on direct appeal and has, thus, procedurally defaulted it. Jeffries offers no "cause" for or "actual prejudice" resulting from his failure to raise the claim below. It should, therefore, be denied. *Frady,* 456 U.S. at 167-68. Even if he had not procedurally defaulted it, this claim is meritless and should be denied.

The Eleventh Circuit has expressly rejected the double jeopardy claim that Jeffries asserts. *See United States v. Little*, 864 F.3d 1283, 1291 (11th Cir. 2017) (holding that imposition of a two-level sentencing enhancement for use of a computer in connection with charged child pornography offenses did not amount to impermissible double counting, since use of a computer was not required to commit the offense of conviction); *United States v. Haynes*, 160 F. App'x 940, 944 (11th Cir. 2005) (rejecting a defendant's double jeopardy challenge to application of an enhancement for use of a computer on the ground that "the double jeopardy clause does not

prohibit a single course of conduct from serving as the basis for both a predicate offense and an enhancement" and further finding no impermissible double counting, because the defendant's "base offense level did not take into account his use of a computer and the Internet"). The rationales adopted in that Circuit apply with equal force to Jeffries's claims.

Even if the enhancement should not have been applied, Jeffries cannot show prejudice. Including the enhancement, Jeffries's faced an advisory guideline range of 87-108 months, which range was restricted to the statutory mandatory minimum term of 120 months. Therefore, even if Jeffries's sentencing range were recalculated without the enhancement, it would still have been restricted to the mandatory term required by the statute to which he pleaded guilty.

    *(ii)*    *Mandatory minimum sentence*

As addressed in section IV(A)(4), supra, a downward departure from the statutory minimum sentence was not permissible under 18 U.S.C. § 2422(b), which requires that anyone found guilty for violating it be "imprisoned not less than 10 years." Accordingly, regardless of what Jeffries calculates his guideline range to be, or what mitigating factors he believes might have applied, his sentence could not have been less than 10 years. The Court did not err in imposing the statutory minimum penalty.

**6.**    ***Improper Search***

Finally, Jeffries claims that there was no probable cause to continue searching through his Facebook account, which had first been obtained through the execution a state search warrant. Jeffries asserts because there was no criminal activity with regards to the original complainant and, therefore, any further searching, including the federal warrant obtained for his second Facebook account, occurred in violation of his Fourth Amendment rights. ECF 42, p. 7.

Jeffries failed to raise this claim in the trial court or on direct appeal and has therefore procedurally defaulted it. Jeffries offers no "cause" for or "actual prejudice" resulting from his failure to raise the claim below. It should, therefore, be denied. *Frady,* 456 U.S. at 167-68. Additionally, by pleading guilty to Count Three, Jeffries "waive[d] all nonjurisdictional defects in the proceedings conducted prior to the entry of the plea." *Moussaoui*, 591 F.3d at 279; *see also Blackledge*, 417 U.S. at 29-30. Nevertheless, this claim is baseless and should be denied.

The complaint that Jeffries references is the complaint made to the Newport News Police Department (NNPD) by the parent of Jane Doe 2. PSR, p. 4, ¶ 11. The complaint was made in reference to inappropriate Facebook messages that had been sent to her daughter by an adult male, later determined to be Jeffries. *Id.* The parent also provided copies of the messages to NNPD. *Id.*

It is true that "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). But a warrant may make reference to other documents, including attached affidavits. *See id.* at 557-58 (noting approvingly that "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant"). In *United States v. Hurwitz*, 459 F.3d 463 (4th Cir. 2006), the Fourth Circuit clarified its rule regarding affidavits and the Fourth Amendment's particularity requirement: "it is sufficient *either* for the warrant to incorporate the supporting document by reference *or* for the supporting document to be attached to the warrant itself." *Id.* at 471.

As explained by Task Force Officer Heather Call of NNPD in her affidavit in support of the federal search warrant application, Jeffries's case was initially investigated by state authorities, who obtained and executed warrants for his and Jane Doe 2's Facebook accounts. The case was

referred to the FBI for further investigation based on review of those accounts. As part of that investigation, TFO Call obtained and executed federal search warrants on two additional Facebook accounts, one of which belonged to Jeffries. Contrary to Jeffries's claim, there was never a determination that he had not engaged in criminal activity with Jane Doe 2. Indeed, that conduct was still under investigation when the federal search warrants were obtained. Jeffries's claims to the contrary are baseless. They are also explicitly contradicted by the Statement of Facts that Jeffries's signed, which provided that a review of Jeffries's Facebook messages with Jane Doe 2 "identified messages of a sexual nature between the two in January and February 2015." ECF 21, ¶ 4. Furthermore, during his plea hearing, Jeffries responded negatively when asked by Judge Krask whether he believed any of his constitutional rights had been violated in connection with the seizure of any evidence. PHT, p. 15.

Therefore, Jeffries's claim that the application for and execution of federal search warrants violated his Fourth Amendment rights is baseless, because the affidavit attached to the warrant provided sufficient specificity as to why his Facebook account needed to be searched in response to the original complaint and the messages presented to NNPD by the parent. And, the facts to which Jeffries agreed when he pleaded guilty directly undercut the only basis for this claim—the absence of any criminal activity vis-à-vis Jane Doe 2.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Petitioner's Motion to Vacate, Set Aside

or Correct a Sentence  pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

Dana J. Boente
UNITED STATES ATTORNEY

By:    _____/s/_____
Kaitlin C. Gratton
Assistant United States Attorney
Virginia State Bar No. 83935
Office of the United States Attorney
Newport News Division
Fountain Plaza Three, Suite 300
721 Lake Front Commons
Newport News, VA 23606
Phone: (757) 591-4000
Email: kaitlin.gratton@usdoj.gov

CERTIFICATE OF SERVICE

I certify that on October 16, 2017 I electronically filed a copy of the foregoing response

with the Clerk of the Court using the CM/ECF system. I further certify that I caused a true and

correct copy of the foregoing to be mailed to the following non-ECF user:

> Dylan A. Jefferies, Reg. No.: 86901-083
> **LEGAL MAIL**
> FCI Petersburg - Low
> Federal Correctional Institution
> Post Office Box 1000
> Petersburg, VA 23804

_____/s/_____
Kaitlin Gratton
Assistant United States Attorney
Attorney for the Government
United States Attorney's Office
Fountain Plaza Three
721 Lakefront Commons, Suite 300
Newport News, VA 23606
Ph: (757)-591-4000
Fax: (757)-591-0866
Email: Kaitlin.gratton@usdoj.gov
