IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| DYLAN ALLEN JEFFRIES, | ) | |
| | ) | |
| Petitioner | ) | CRIMINAL ACTION NO.: 4:15cr83 |
| | ) | CIVIL ACTION NO.: 4:17cv75 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

<u>**RESPONSE OF THE UNITED STATES TO DEFENDANT'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**</u>

# Government Exhibit No. 1

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 4:15 cr83 |
| | ) | |
| | ) | |
| DYLAN ALLEN JEFFRIES | ) | |

## AFFIDAVIT OF CHAD G. DORSK, ESQUIRE

1. The undersigned counsel is very familiar with the Petitioner's case.

2. When initially contacted by Petitioner via telephone on November 18, 2015, Jeffries stated that he was unsure of the charges but believed it to be possession of child pornography. Possession of child pornography does not have a mandatory minimum sentence. Therefore counsel probably advised the Petitioner that at most he was looking at a couple of years incarcerated if convicted based on having no criminal convictions. During the initial phone consultation with Petitioner counsel was hired and had made no promises of what the Petitioner was to expect without knowing more about his case.

3. Petitioner alleges some quasi-specific grounds for ineffective assistance of counsel to which counsel has responded as follows:

4. First, at page six (6) of his Pro Se Memorandum of Law and Facts Supporting Motion to Vacate Under 28 U.S.C. Section 2255 (ECF Document 39), Petition alleges as follows:

1. "My attorney was too concerned with making future deals with prosecutors. He was fearful and intimidated by prosecution. He was easily intimidated by the entire process. Expressed the nastiness toward me by the prosecutor but could explain why such rancor toward me. Had very limited contact with me and showed disregard for my life. Recommend that I take a "deal" which is business as usual in Norfolk."

5. The undersigned counsel respectfully denies some of the allegations contained in 2255 ground 2A., including but not limited to, as follows:

   a. Counsel met with Petitioner or otherwise counseled him concerning his case on at least (13) thirteen separate occasions. In addition counsel also met with Petitioner's girlfriend and sister as well as his mother and father on multiple occasions and devoted many additional hours to answering their questions by phone, email and text.

   b. Petitioner preferred to conduct meetings with counsel when only absolutely necessary and affirmatively preferred for counsel to communicate through his intermediaries as these persons would later speak with him and communicate between counsel and Petitioner.

   c. Petitioner did not wish to be brought to the visitation room as he would complain that he would then be denied his meals.

d. Appellant requested that counsel not come to Western Tidewater Regional Jail on specific days of the week or at specific times (Emails attached which state the same). Petitioner also wanted to know in advance when a meeting between he and counsel would occur and when he wanted to see counsel he would arrange it through his intermediaries (Emails attached which state the same). For example, on December 18, 2015, counsel was told not to visit Petitioner during the time at which meals were served. When counsel inquired into when Appellant wanted meetings to take place after receiving the email, it was stated by Petitioner that counsel would be notified of when next to come to see him. Also, on March 7, 2016, counsel received a message from Appellant's sister, which stated that he did not want counsel to visit him on Wednesdays any longer.

e. In preparation for Petitioner's case, counsel consulted with Fran Pratt of the Federal Public Defender's Office in Alexandria, Virginia as well as Jonathan Jeffress, an Assistant Federal Public Defender from the office in the District of Columbia. Mr. Jeffress was the presenter on child sex cases in 2014 for the Federal Public Defenders Conference in Richmond. I was provided with his speaking

and training materials concerning enticement cases and production of child pornography and I used Mr. Jeffress as a resource via telephone and email because of his expertise in these matters. In addition, counsel had handled child pornography cases in Federal Court prior to that of the Petitioner's and knew the law very well.

f. In addition, counsel appealed the bond determination on December 15, 2015 at the Petitioner's request. At no time did counsel make a promise to Petitioner that he would in fact receive a pretrial release.

g. On January 10, 2016 the United States Department of Justice made a tentative offer of a plea of guilty to Petitioner, which was to expire five (5) days later on January 15, 2016 at 5:00 p.m. Plaintiff was offered a plea to Count Three of the indictment and was told that if he did not accept this offer then the Government would reserve the right to return to the Grand Jury to Pursue any and all additional appropriate charges. Petitioner very much wanted to take the plea offer and was especially interested in providing substantial cooperation as counsel had negotiated the inclusion of Rule 35b language in his plea agreement. Originally, the government had omitted cooperation language.

h. Counsel presented all relevant Facebook evidence as provided in discovery and the Appellant made a decision to plead guilty to Count Three as it was a lesser mandatory minimum sentence than the production or attempted production of child pornography charge. When Petitioner made the decision to plead guilty he did not hesitate or contest the allegations as the evidence presented was contained in his own writing and clearly identified the criminal conduct.

i. Counsel notified and discussed in great length the benefits of pleading guilty and that the Government could reduce his sentence based on his providing substantial cooperation. The Petitioner was extremely interested in cooperating and provided a lengthy debrief to the Government, which counsel both, arranged and attended. At the time of the Petitioner's Habeas Petition, counsel was in the process of trying to effect a reduction based on Petitioner's substantial cooperation. In fact, the Petitioner advised his family to hire the undersigned after his sentencing date to assist in Rule 35b discussions with the government. Counsel was hired by Petitioner to do this follow up work on or about September 12, 2016.

    j. It was not until many months after sentencing that Petitioner's father began to inquire into what other remedies may be available to Petitioner such as appeal or Habeas. In fact Petitioner had inquired of the undersigned to investigate the possibility of filing a Habeas Petition on his behalf.

    k. The undersigned counsel thoroughly investigated this case, was aware of no meritorious pretrial motions or trial defenses, and concluded that the Petitioner's best chance to obtain the least severe outcome was to accept the Government's proposed Plea Agreement and try to mitigate his sentence.

    l. In addition, counsel filed objections to the Presentence Report as instructed and was successful in arguing for a reduction, which substantially lowered his guideline range.

6. The Petitioner filed a Supplemental Pleading (E.C.F. Document 42), that Petitioner further alleges as follows:

7. "From the first meeting with attorney Chad Dorsk, on or about the 18th of November 2015, Petitioner was supplied with faulty and incorrect information in regards to nearly every aspect of Petitioner's case. That before turning himself in to the FBI per a phone call by Agent Call, Petitioner was told by attorney Dorsk that he should be able to get bond "no problem" and that he would

only be looking at a 2 or 3 year sentence at the most. A the bond hearing the Prosecutor revealed that all three counts of the indictment carried excessive mandatory minimum sentences, regardless of cooperation from Petitioner."

8. The undersigned counsel respectfully denies some of the statements/allegations in the Supplemental Pleading contained in 2255 ground B.2(1), including but not limited to, as follows: (many of these responses are already contained in the response to the initial pleading and are therefore duplicative)

    A. Petitioner called the undersigned counsel and stated that he was charged federally with possession of child pornography and that the Feds may have found child pornography on his computer. During this initial consultation, the undersigned stated that if these charges were stated accurately, that possession of child pornography did not carry a mandatory sentence.

    B. Counsel believed based on the information provided during an initial phone conference and before being retained that the Petitioner stood a good chance of receiving a bond based on past experience. Counsel advised Petitioner of the

   actual charges once retained and in possession of a copy of the indictment and before the initial appearance.

9. Petitioner stated that in B.2(3): Immediately before the bond hearing, before being transferred to Western Tidewater Regional Jail in Suffolk, VA, Dorsk stated to Petitioner that he "knew the Prosecutor and that he would be able to work something out".

   A. Counsel did know the Prosecutors in this case and had worked with them in the past. Counsel was able to secure a favorable plea for the Petitioner based on this relationship and vigorous efforts to advocate on the Client's behalf.

10. Petitioner stated in B2(4): almost all communication with attorney Dorsk was through Petitioner's father and sister, who had to corner him in order to get a straight-forward answer in regards to any questions. This kept the Petitioner from being clear on several issues throughout the process.

   A. See undersigned counsel's response in Ground 2 of the initial pleading.
   B. Because the undersigned could not make any specific promises regarding either the

-8-

sentence that would be rendered or the possibility of a sentence reduction based on substantial cooperation, the Petitioner and his family were very upset at times.

C. Counsel answered any and all queries from both Petitioner and his family. Petitioner expressed a desire to plead guilty once he was he received counsel and the facts of the case.

D. The undersigned effectively negotiated a plea; assured that Petitioner understood the ramifications of the plea; further assured the Petitioner understood the difference between a trial and a plea, all as found by United States Magistrate Judge Robert J. Krask in his Order Accepting Plea of Guilty filed on February 8, 2016, which stated in pertinent part that:

> After cautioning and examining *the* defendant under oath concerning each of the subjects mentioned in Rule II, the Court determined *that* the guilty plea was knowledgeable and voluntary, and that the offense charged is supported by an independent basis in fact establishing each of the essential elements of such offense. The Court therefore accepts the plea of guilty.

11. Petitioner stated in paragraph 14 of his Petition that after sentencing was concluded, Dorsk advised Petitioner not to appeal as he had waived that right in his plea agreement.

    A. In fact the Petitioner had waived his right to appeal as contained in his plea agreement and this inquiry into appellate rights/options did not occur until many months after the case was concluded.

12. Petitioner stated in Paragraph 15 that Dorsk failed to explain that the statute of Petitioner's charge requires "knowingly" committing the crime as well as having required a substantial step toward completion of the crime." If Petitioner had been aware of these factors he would not have signed the plea agreement as it stood."

    A. All of the elements of the charges in the indictment were explained to Petitioner by the undersigned. The law as it applied to the facts was discussed in detail with Petitioner and is explicitly contained in the indictment as well as the plea and statement of facts.

    B. All of the parties agreed prior to the guilty plea and finding of guilt that the elements needed for conviction were met.

C. In addition the Court gave the Petitioner credit for acceptance of responsibility.

Respectfully Submitted,

*Chad G. Dorsk, Esq.*

STATE OF VIRGINIA
CITY OF NORFOLK

SUBSCRIBED and sworn to me on this 1st Day of September, 2017, by Chad Dorsk whom is known personally to me.

Megan Blancho, Notary Public

My Commission expires:
4/31/2020

From: **Chad Dorsk** cdorsk@gmail.com
Subject: Re: Dylan Jeffries
Date: March 3, 2016 at 11:10 AM
To: Mallory Dudley mallorydjdudley@gmail.com



Hi Mallory,

The PSR went very well and i think he did fine. He cannot be released on house arrest. The way that a person gets a reduction is as follows: 1. the provide assistance and 2. that it is considered substantial. The government will use what he gives them if they can, the measure is based on the government's ability to use it. His sentencing is in May it is unlikely that it will be considered worthy of a time cut prior to that time. Also a reduction of 85 to 90 percent is more than is generally given. Usually reductions are around 35 to 50 percent. However that is in the discretion of the judge. The process requires the Government to file a motion with the court to reduce and it usually takes a year or so. The debrief will not be in the jail.

Take care.

chad

> On Mar 2, 2016, at 2:18 PM, Mallory Dudley <mallorydjdudley@gmail.com> wrote:
>
> Good Afternoon, Mr. Dorsk,
>
> Dylan wanted me to ask you about 3 things.
>
> 1) How do you think he did during his PSR?
> 2) Is there a chance that he could be released on house arrest? if the information he gives is worth 85- 90% of time with time served?
> 3) He is concerned about relaying certain information while he is at the jail. Is there a way to have that meeting in a courthouse or other location, so that he doesn't have to fear retaliation if something got back to the jailhouse.
>
> Thanks and have a wonderful day!
> Mallory Dudley
>
> On Mon, Feb 22, 2016 at 9:01 AM, Chad G. Dorsk <cdorsk@gmail.com> wrote:
>
>> Psr interview is easy and basic. Mostly concerning work history and things of that nature. Also they ask if he accepts responsibility. That is the most important part. Second the prosecutor will not ask for more than 10 years. Third the government is trying to schedule the debrief.
>>
>> On Feb 22, 2016 8:59 AM, "Mallory Dudley" <mallorydjdudley@gmail.com> wrote:
>>
>>> Hi Mr. Dorsk,
>>> Dylan would like an idea of what to expect during his presentencing interview, and when it might happen.
>>>
>>> Also, he is concerned that the prosecution will try to convince the judge to sentence him to more than the minimum 10 years. What does it seem they will do to you?
>>> He is also anxious about getting this opportunity rolling because since the news story he feels that he has a target on his back. So any updates you can give us will be great.
>>>
>>> Thank you,
>>> Mallory Dudley
>>>
>>> On Feb 19, 2016 3:20 PM, "Mallory Dudley" <mallorydjdudley@gmail.com> wrote:
>>>
>>>> Hello Chad,
>>>>
>>>> I heard that you and Dylan will take part in the pre-sentencing interview next week. What kinds of questions should Dylan be prepared to answer during this interview? Will there be anything that we will need to know and answer as well since he lives with me?
>>>>
>>>> Also, in court last week the judge said he would have to pay a $100 fee before he is brought in for sentencing. How should we take care of that?
>>>>
>>>>
>>>> Thanks,
>>>>
>>>> Mallory Dudley
>>>>
>>>>
>>>> --
>>>> Chad G. Dorsk, Esquire

From: **Regalia, Nicholas (CRM)** Nicholas.Regalia@usdoj.gov
Subject: RE: Dylan Jeffries
Date: June 13, 2017 at 1:45 PM
To: Chad Dorsk cdorsk@gmail.com

Chad,

Our position, as previously conveyed to you by Francesca Liquori, is that Jeffries did not substantially assist in the investigation or prosecution of Bellamy et al. Likewise, at present, all such codefendants have signed plea agreements and will not be proceeding to trial. Thus, Jeffries is not needed as a witness. Nonetheless, you can direct future inquiries regarding Rule 35 motions to Katy Gratton.

If you have any questions, do not hesitate to ask.

Nick


-----Original Message-----
From: Chad Dorsk [mailto:cdorsk@gmail.com]
Sent: Tuesday, June 13, 2017 12:41 PM
To: Regalia, Nicholas (CRM) <Nicholas.Regalia@CRM.USDOJ.GOV>
Subject: Dylan Jeffries

Nicholas,

I understand that you are handling the Bellamy case. In any event. I represented Jeffries in a federal case in which he debriefed on Bellamy. Please let me know if there is anything my client can do to assist in your current case.

Thanks,

Chad

From: **Mallory Dudley** mallorydjdudley@gmail.com
Subject: Dylan Jeffries
Date: September 8, 2016 at 11:33 AM
To: chad dorsk cdorsk@gmail.com



Hello Mr. Dorsk,

I just want to touch base with you. My family would like to retain your services concerning Dylan's case for cooperation with the government. If you are available, I would like to bring a certified check for half of the $2500 you requested on Monday (September 12th) to your office at noon.

I will not be able to meet at length that day, however I would like to meet with you later in the week to discuss some questions that Dylan and my family have. Please let me know any availability you will have Wednesday- Friday next week.

Thank you and have a wonderful day.
Mallory Dudley

From: **Mallory Dudley** mallorydjdudley@gmail.com
Subject: **Re: Dylan Jeffries**
Date: **December 18, 2015 at 12:47 PM**
To: **Chad Dorsk** cdorsk@gmail.com



Okay sounds promising at least. Were we able to find anything to suppress from the search warrants?

- My husband wanted to know if it was legal for them to 1) come into our home with just Dylan's permission  2) seize items that did not belong to Dylan, and 3) search the premises when there was no one at the property?

I don't think there is any reason for us to meet at this point. I only ask because I will be leaving Hampton Roads on the 23rd and will return on the 27th and I do not want to miss anything. If we get approval of a review bond hearing, when could we possibly expect that to happen so I know to be here and prepare the house?

- Dylan wanted me to let you know that when you do come to see him again to try not to arrive during the lunch hour because they just withhold that meal for the day if they miss the scheduled time.

I appreciate you going and meeting with him and for understanding just how important this is to us all. Please keeping working hard and fighting for him because his future is at stake. If you need or want any additional information from me feel free to just ask.

Thanks,
Mallory

On Fri, Dec 18, 2015 at 12:03 PM, Chad Dorsk <cdorsk@gmail.com> wrote:
> but if you'd like id be happy to speak with you just let me know when. I have more information from the prosecutor but i will have to discuss with Dylan in person.
>
>> On Dec 18, 2015, at 11:54 AM, Mallory Dudley <mallorydjdudley@gmail.com> wrote:
>>
>> Hi Chad,
>>
>> Just wondering how things went with the prosecutor yesterday. Any good news? Should we meet to dicuss anything?
>>
>> Best,
>> Mallory
>>
>> On Dec 15, 2015 4:18 PM, "Chad G. Dorsk" <cdorsk@gmail.com> wrote:
>>> Also, Thursday am going to meet with prosecutor.
>>>
>>> On Dec 15, 2015 3:47 PM, "Chad G. Dorsk" <cdorsk@gmail.com> wrote:
>>>> It's filed. Just waiting on judge.
>>>>
>>>> On Dec 15, 2015 3:22 PM, "Mallory Dudley" <mallorydjdudley@gmail.com> wrote:
>>>>> Hi Chad
>>>>>
>>>>> I was just wondering if we have any updates on Dylan's case or his chance of bond before Christmas.
>>>>>
>>>>> Thanks!
>>>>>
>>>>> On Dec 4, 2015 1:10 PM, "Chad G. Dorsk" <cdorsk@gmail.com> wrote:
>>>>>> Ok. I am in the courthouse. It may be easier for you to come up here. Today is taking forever. I'm on the 4th floor of the new courthouse.
>>>>>>
>>>>>> On Dec 4, 2015 1:07 PM, "Mallory Dudley" <mallorydjdudley@gmail.com> wrote:
>>>>>>> His cell number is 540-968-6093. On my way to your office now.
>>>>>>>
>>>>>>> On Dec 4, 2015 12:54 PM, "Chad G. Dorsk" <cdorsk@gmail.com> wrote:
>>>>>>>> Can I have your father's number?
>>>>>>>>
>>>>>>>> On Dec 2, 2015 2:34 PM, "Mallory Dudley" <mallorydjdudley@gmail.com> wrote:
>>>>>>>>> Hi Chad,
>>>>>>>>>
>>>>>>>>> I knew you were busy yesterday and thought I would give you some time before I started asking questions. I

From: **Chad G. Dorsk** cdorsk@gmail.com
Subject: **Dylan Jeffries**
Date: **September 15, 2016 at 2:57 PM**
To: **Molly A. Gonzalez** Molly.A.Gonzalez@usdoj.gov



Molly.
Wanted to inquire as to Dylan Jeffries and how you think he will proceed regarding cooperation etc. Just let me know.
Thanks
Chad

From: **Mallory Dudley** mallorydjdudley@gmail.com
Subject: Dylan Jeffries
Date: September 8, 2016 at 11:33 AM
To: chad dorsk cdorsk@gmail.com



Hello Mr. Dorsk,

I just want to touch base with you. My family would like to retain your services concerning Dylan's case for cooperation with the government. If you are available, I would like to bring a certified check for half of the $2500 you requested on Monday (September 12th) to your office at noon.

I will not be able to meet at length that day, however I would like to meet with you later in the week to discuss some questions that Dylan and my family have. Please let me know any availability you will have Wednesday- Friday next week.

Thank you and have a wonderful day.
Mallory Dudley

From: **Gratton, Kaitlin (USAVAE)** Kaitlin.Gratton@usdoj.gov
Subject: U.S. v. Jeffries - Plea Offer
Date: January 10, 2016 at 6:19 PM
To: Chad G. Dorsk cdorsk@gmail.com
Cc: McKeel, Lisa (USAVAE) Lisa.McKeel@usdoj.gov

Dear Chad,

As discussed, attached please find a plea offer for Mr. Jeffries. The offer is to Count Three of the indictment. We have included cooperation language, as you requested. Please note that this offer expires on Friday, January 15, 2016 at 5:00 p.m.

Thank you,

Katy

Katy Gratton
Assistant United States Attorney
Eastern District of Virginia
(757) 591-4010



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of Virginia*
**Newport News Division**

January 10, 2016

**VIA Electronic Mail**
Chad Dorsk
E-mail: cdorsk@gmail.com

Re: <u>**United States v. Dylan Allen Jeffries** 4:15cr83</u>

Dear Chad:

    I write regarding the above-referenced matter. Based on evidence gathered and reviewed so far, I wish to make the following tentative plea offer to your client. In exchange for your client's plea to **Count Three** of the pending indictment, charging him with **Coercion or Enticement**, in violation of 18 U.S.C. §§ 2422(b) and 2, the government will dismiss the remaining charges of the indictment against your client. As part of the plea agreement, the government will agree not to further prosecute your client for additional conduct related to the conduct charged in the indictment. I will also include cooperation language in the plea agreement as it appears that Mr. Jeffries may be in the position to provide information as to others involved in criminal activity.

    In order to have the time to prepare this case for trial, this offer shall expire on **Friday, January 15, 2016 at 5:00 p.m.** Please note that this offer must be reviewed and signed by my supervisor in order to be binding on this office. If your client decides to reject this offer, I reserve the right to return to the Grand Jury to pursue any and all additional appropriate charges based on your client's conduct.

    As always, I appreciate your cooperation in this matter. If you have any questions on the above, please contact me directly at (757) 591-4010.

Sincerely,

Dana J. Boente
United States Attorney

By: _____/s/_____
Kaitlin C. Gratton
Assistant United States Attorney