UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

DYLAN ALLEN JEFFRIES,

        Petitioner,

v.

                                 Civil No. 4:17cv75
                                 Criminal No. 4:15cr83

UNITED STATES OF AMERICA,

        Respondent.

## OPINION AND ORDER

This matter is before the Court on Dylan Allen Jeffries' ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF Nos. 39, 42. Petitioner's § 2255 motion advances seven grounds for relief. After such motion was fully briefed, Petitioner filed an unopposed motion seeking leave to file an amendment to his § 2255 petition adding an eighth ground for relief. ECF No. 59. This Court granted such unopposed motion, although it expressly noted that the Court was not making any finding regarding the timeliness of such amendment. ECF No. 66. The Government has now filed a response to the amendment and Petitioner has filed his reply.

For the reasons set forth below, Petitioner's § 2255 motion, as amended, is **DISMISSED and DENIED.** Additionally, Petitioner's associated "Motion for Partial Summary Judgment," "Motion Requesting Status" of his § 2255 motion, and Motion for Release on

Bond pending resolution of his § 2255 motion, are **DISMISSED and DENIED.** ECF Nos. 58, 70, 71.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a written plea agreement, in February of 2016, Petitioner entered a plea of guilty to one count of a multi-count indictment: Count Three – Coercion or Enticement, in violation of 18 U.S.C. § 2422(b). ECF No. 20. As set forth in the written plea agreement, the statutory punishment for such offense is a mandatory minimum term of ten (10) years imprisonment and a maximum term of life imprisonment. Id. ¶ 1. At Petitioner's guilty plea hearing, he not only stated, while under oath, that he understood the charge, the elements, and the punishment, but he indicated that he read and understood each page of the plea agreement, and that counsel fully discussed the plea agreement with Petitioner before he decided to sign it. ECF No. 43, at 12-13. Additionally, Petitioner stated that he understood that the statute under which he was charged established the mandatory minimum and the maximum possible sentences, and that while an "advisory sentencing guideline range" would be calculated, the Court would ultimately impose a sentence "not less than the mandatory minimum sentence in this case, which is ten years." Id. at 17-18. Later in the proceeding, Petitioner entered a plea of "guilty" to Count Three, further indicating, while under oath, that he was pleading guilty because he was "in fact, guilty" of such offense. Id. at 24.

2

Petitioner also admitted that he read and understood the signed "Statement of Facts," that he reviewed such document with his attorney, and that: (1) such facts were "true and correct"; and (2) there was not anything in the signed Statement of Facts that he disagreed with. Id. at 24-25.

In May of 2016, Petitioner appeared before the undersigned judge for sentencing. At that time, the preliminary calculation of Petitioner's advisory Guideline range recommended a sentence of 188-235 months. See ECF Nos. 27, 30. However, Petitioner's counsel objected to such Guideline calculation, ultimately leading the Court to continue Petitioner's sentencing hearing. ECF No. 32. On June 26, 2016, the Court resumed the sentencing hearing, sustained defense counsel's objection to the Guideline calculation, and recalculated the advisory Guidelines. Although the Court found that the updated Guideline calculation resulted in an unrestricted sentencing range of 87-108 months imprisonment, in light of the ten-year statutory mandatory minimum, the "restricted guideline range" was 120 months. ECF No. 46, at 13-15. Adopting the joint recommendation of counsel for both parties, the Court imposed the minimum sentence authorized by law: 120 months imprisonment. Id. at 31.

Consistent with Petitioner's express waiver of appeal, his desire to be debriefed by the Government in an attempt to secure a sentence reduction, as well as his self-identified desire to

show "good faith in not breaching the agreement," ECF No. 56, at 8, Petitioner did not appeal his conviction or sentence to the Fourth Circuit.

Petitioner subsequently filed the instant § 2255 motion, as well as a brief in support, advancing seven claims for relief. ECF Nos. 39, 42. After such motion was fully briefed, Petitioner was allowed to file a supplement adding an eighth claim asserting actual innocence, and such eighth claim was fully briefed on July 19, 2018. ECF No. 68. The pending § 2255 motion is therefore ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id.; see Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that enables a petitioner to collaterally attack his

4

sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Accordingly, a § 2255 collateral challenge "may not do service for an appeal." Id. at 165.

The "higher hurdle" applies because, once a Petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 164-66. Accordingly, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). The "existence of cause" excusing a procedural default "must turn on something external to the

5

defense," such as the "denial of effective assistance of counsel." Id. at 493.

A § 2255 petitioner need not, however, overcome such "higher hurdle" to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both: (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) that counsel's inadequate performance caused the petitioner prejudice. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Satisfying the first prong of Strickland requires a petitioner to establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Id. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The prejudice prong of the Strickland test is slightly modified when a habeas petitioner challenges defense counsel's handling of plea negotiations. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 566 U.S. 156, 163 (2012). Accordingly, based on the posture of the instant case, to establish Strickland prejudice regarding counsel's pre-plea behavior, Petitioner must demonstrate a reasonable probability either that: (1) "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)); or (2) Petitioner would have accepted a more favorable plea deal that "would have been entered without the prosecution canceling it . . . ." Merzbacher v. Shearin, 706 F.3d 356, 366 (4th Cir. 2013) (quoting Missouri v. Frye, 566 U.S. 134, 147 (2012)).

Congress and the President have established a one-year limitations period within which a petitioner must file a § 2255 motion. 28 U.S.C. § 2255(f). The one-year limitations period begins running on the latest of four dates: (1) the "date on which the judgment of conviction becomes final"; (2) the date on which

7

certain government-created impediments to filing are removed; (3) the date on which a new right has been recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which facts supporting the claim could be discovered through due diligence. Id.

### III. DISCUSSION

#### A. Lack of Jurisdiction

Petitioner's first claim for relief alleges the absence of federal jurisdiction, asserting: (1) that Petitioner's online communications never crossed state lines; and (2) that using the internet is insufficient to establish the requisite interstate nexus. The Government's opposition asserts that such claim is procedurally defaulted and alternatively fails on the merits.

#### 1. Procedural Default

First, the Government correctly asserts that Petitioner's first ground for relief is procedurally defaulted as it was not previously raised in this Court or on direct appeal. Mikalajunas, 186 F.3d at 492-93. Moreover, while such claim challenges the "jurisdictional" element of the offense of conviction, Petitioner's allegations fail to undercut this Court's subject matter jurisdiction to preside over a federal criminal case alleging the violation of a federal law. Rather, Petitioner's challenge is more accurately characterized as a challenge to the sufficiency of the evidence because he asserts that, factually,

the internet communications at issue never crossed state lines. See Welch v. United States, No. 2:05cr8, 2008 WL 4981352, at *2 n.2 (W.D.N.C. Nov. 19, 2008) (noting that although a true jurisdictional challenge "could not be procedurally defaulted," multiple circuit courts have recognized that a claim alleging a defect in proof on a jurisdictional element of a federal crime is subject to the procedural default rules).

While Petitioner's reply brief correctly asserts that ineffective assistance of counsel can provide the "cause" necessary to excuse procedural default, Petitioner falls far short of demonstrating that his counsel was constitutionally deficient.[1] Petitioner offers no facts in his original § 2255 motion and brief that would support a finding that counsel performed deficiently by failing to challenge the jurisdictional element. In his reply brief, Petitioner asserts for the first time, without evidentiary support, that Facebook maintained at least one, and possibly two, data centers in Virginia at the time of his offense. ECF No. 56, at 8-9. However, even assuming, in Petitioner's favor, that such

---

[1] To the extent Petitioner alternatively asserts in his reply brief that "cause" is established based on his appeal waiver and his desire to show good faith by not breaching his plea agreement, such claim also fails. Cf. United States v. Jones, 56 F.3d 62, 1995 WL 321263, at *1 (4th Cir. 1995) (unpublished table opinion) ("Although [the petitioner's] plea agreement prevented him from appealing, this is not sufficient cause for his procedural default.").

unsupported and tardy[2] factual assertion is accurate, Petitioner fails to demonstrate that his counsel erred as he relies on pure speculation when contending that such data centers actually processed his online communications and that they did so in a manner that was entirely intra-state. Additionally, even if counsel was deficient for failing to investigate this issue further, Petitioner fails to demonstrate prejudice under Strickland or Frady, instead merely assuming that further investigation would have lead to a favorable result. Petitioner's first ground for relief is therefore dismissed as procedurally defaulted.

### 2. Merits

Alternatively, even if the Court could reach the merits of such defaulted claim, it would adopt the Government's alternative analysis demonstrating that such claim lacks merit. Notably, Petitioner previously admitted in his sworn Statement of Facts not only that he used the internet during the commission of his offense, but that he sent "Facebook messages" to the minor victim and that such messages are "transferred . . . over the Internet through Facebook, Inc. servers, which are located outside the Commonwealth of Virginia." ECF No. 21 ¶ 1 (emphasis added). In

---

[2] Cf. Touchcom, Inc. v. Bereskin & Parr, 790 F. Supp. 2d 435, 446 (E.D. Va. 2011) (explaining that "[t]ypically courts will not consider an argument raised for the first time in a reply brief" because it is unfair to the opposing party) (citations omitted).

his § 2255 filings, Petitioner merely speculates that because Facebook purportedly has a physical location(s) in Virginia: (1) such data center directly processes "Facebook Messenger" communications; (2) it did in fact process the communications at issue in this case; and (3) it processed them in a manner that never crossed state lines. Such widely speculative assertions are far from the showing necessary to obtain § 2255 relief and/or to obtain further discovery of a fact previously sworn to be true in conjunction with a guilty plea.[3] Petitioner's factual argument asserting that online communications never crossed state lines therefore fails on the merits.

As to Petitioner's legal argument on this issue, Petitioner references an out-of-circuit case analyzing a federal offense that required wire communications "to cross state lines." United States v. Biyiklioglu, 652 F. App'x 274, 280 (5th Cir. 2016). However, here, the jurisdictional element of the offense of conviction requires the use of "any facility or means" of interstate commerce, 18 U.S.C. § 2422(b), and it appears that "[e]very court to address the issue agrees with the unremarkable proposition that the

---

[3] Petitioner's speculative assertions are rejected by the Court as "palpably incredible and patently frivolous or false" as they expressly contradict his prior sworn statements attesting to the accuracy of the information in the Statement of Facts. United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005); see United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc) ("If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding.").

Internet is a means of interstate commerce," United States v. Pierce, 70 M.J. 391, 395 (C.A.A.F. 2011) (citing cases); see United States v. Tykarsky, 446 F.3d 458, 470 n.6 (3d Cir. 2006) ("The Government . . . showed that [the defendant] communicated with the putative minor via the Internet, which is all that is required to satisfy the jurisdictional element of § 2422(b)."); United States v. Barlow, 568 F.3d 215, 220-21 (5th Cir. 2009) (rejecting a claim that the agent's testimony was insufficient because it did not establish that the "emails and pictures traveled in interstate commerce," explaining that: (1) § 2422(b) does not "require[] proof of travel across state lines," but rather, requires only "the use of any facility or means of interstate . . . commerce"; and (2) "it is beyond debate" that the Internet is a "facilit[y] or means of interstate commerce") (emphasis is original) (internal quotation marks omitted). Based on such precedent, it does not appear that the law even requires the Government to prove that the messages at issue crossed state lines in order to establish a violation of § 2422(b). For the above stated reasons, even if Ground One were not defaulted, it would be denied on the merits.

## B. Ineffective Assistance of Counsel

Petitioner's second ground for relief asserts that his attorney provided constitutionally deficient performance in a multitude of ways. Such claim is not defaulted, but is subject to the deferential two-part review standard established in Strickland

12

v. Washington. As outlined below, Petitioner fails to satisfy either prong of such test.

### 1. Constitutionally Deficient Performance

Petitioner asserts that his lawyer provided him with "faulty and incorrect" information throughout the case, underrepresented the likely sentence prior to Petitioner deciding to surrender himself to authorities, overstated the likelihood of a favorable plea deal, rarely communicated directly with Petitioner and did not provide timely or clear answers when questions were asked by Petitioner's family, failed to secure a more favorable plea agreement with language that guaranteed Petitioner a sentence reduction for his cooperation, failed to advise Petitioner on the elements of the offense (including that it must have been "knowingly" committed and required a "substantial step" toward completion), pressured Petitioner into signing the plea agreement, assured Petitioner that he would get a post-sentencing substantial assistance reduction of 50% to 85%, ignored Petitioner's requests to develop psychological evidence in support of a "hot air" defense demonstrating that Petitioner never intended to have sexual contact with the minor victim, waited too long to object to a substantial Guideline sentencing enhancement, ignored Petitioner's instruction that counsel argue for a sentence less than 120 months, failed to object to the judge's refusal to consider a sentence

less than 120 months, and improperly advised Petitioner not to file an appeal subsequent to sentencing.

While the Court addresses the majority of Petitioner's subclaims below, the Court has individually considered each and every sub-argument advanced by Petitioner regarding his counsel's performance, and finds that such arguments fail to demonstrate that counsel provided constitutionally deficient performance regardless of whether such claims are considered individually or collectively.

a.

First, as noted by the Government, many of Petitioner's assertions are nothing more than general complaints "about the handling of his case," ECF No. 49, at 7, to include the contentions that counsel should have been a better communicator, or more accurately predicted from an early stage the likelihood that Petitioner would serve a lengthy prison sentence. Petitioner's contention that counsel provided "faulty and incorrect" information is a "vague and conclusory allegation" that warrants no "further investigation by the District Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (citation omitted). Additionally, Petitioner's contentions that counsel did not communicate with him often enough, effectively enough, or directly (rather than through Petitioner's family), even if accepted as true, fail to rise to the level of a constitutional violation.

Such finding is bolstered by evidence in the record, to include: (1) emails and other documents reflecting counsel's efforts in representing Petitioner; and (2) counsel's handling of the bond hearing,[4] appeal of the bond hearing, and timely and effective sentencing objection that likely resulted in a <u>multi-year reduction</u> in the term of imprisonment imposed by the Court.

To the extent that counsel purportedly made general misrepresentations regarding the likelihood of a favorable plea deal and/or the sentence that <u>counsel predicted</u> that Petitioner would receive, Petitioner fails to demonstrate that such predictions, even if erroneous, rose to the level of constitutional errors. Emails and other documents before the Court further reflect counsel's efforts to negotiate a favorable plea deal with a reduced mandatory minimum sentence and efforts to secure Petitioner's ability to receive a sentence reduction based on his substantial assistance. ECF Nos. 49-1, at 19; 56-1, at 3.

b.

Second, Petitioner's contention that counsel failed to secure a more favorable plea deal, to include a deal with a guaranteed benefit for cooperation, are factually accurate; that is, counsel

---

[4] Petitioner appears to suggest that he never would have surrendered to authorities had his lawyer not assured him that he would be released on bond. However, it appears that Petitioner surrendered <u>after</u> the issuance of an arrest warrant that was obtained <u>after</u> Petitioner was indicted, rendering any misstatements by counsel largely irrelevant to Petitioner being taken into custody. ECF No. 7.

did not secure these benefits. However, Petitioner fails to demonstrate that counsel was deficient in any way, let alone constitutionally deficient, for failing to secure such hypothetical benefits. Notably, the record demonstrates that counsel attempted to secure a plea deal to a lesser charge, and took the necessary steps to provide Petitioner the opportunity to obtain a sentence reduction due to cooperation. The Government, however, refused to agree to a plea deal to a lesser offense with a lesser mandatory minimum. The Government did agree to modify the proposed plea agreement to add language that would allow Petitioner to cooperate, and such modified agreement establishes counsel's effective performance on this issue. See ECF No. 49-1, at 19 (contemporaneous email from the Government to defense counsel indicating that the plea offer made by the Government included cooperation language at the request of defense counsel). Petitioner's wildly speculative contention that counsel should have secured a plea agreement with a guaranteed reduction for cooperation finds no support in the record, with the Court further noting that: (1) in ten years on the federal bench, this Court cannot recall a single case where the Government agreed to guarantee a sentence reduction based on future cooperation; and (2) even if such terms were theoretically possible, Petitioner fails to demonstrate that, on this record, defense counsel had any "bargaining chips" that could have secured such atypical terms.

16

Petitioner's contention that counsel either pressured him into pleading guilty, or guaranteed him that he would receive a substantial sentence reduction, are rejected as "patently frivolous or false" in light of Petitioner's contrary sworn statements at the plea hearing, as well as other evidence in the record.[5] United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005) (explaining that, because a defendant's sworn statements at a guilty plea hearing "carry a strong presumption of verity," except in extraordinary circumstances, contradictory allegations advanced in a § 2255 motion "are always palpably incredible and patently frivolous or false") (quotation marks and citations omitted); ECF No. 43, at 16 (reflecting Petitioner's sworn statements that: (1) defense counsel did not "make any promise of leniency or promise of any kind" other than what is contained in the written plea agreement; and (2) that no one "threatened [Petitioner] in any way or forced [him] to plead guilty").[6]

---

[5] Petitioner's suggestion that counsel improperly added pressure to the plea process by informing Petitioner the he had a short time period to make a plea decision and/or by discussing the risk that the Government could pursue further charges fails to satisfy Strickland's performance prong. As illustrated by a letter sent by the Government to defense counsel in January of 2016: (1) the Government's proposed plea offer was valid for only five days; and (2) the Government expressly reserved the right to return to the Grand Jury to pursue additional charges if the offer was not accepted. ECF No. 49-1, at 19; cf. United States v. Williams, 47 F.3d 658, 661 (4th Cir. 1995) ("A prosecutor's threats to seek a harsher indictment are constitutionally legitimate even though the prosecutor's goal in making those threats is to convince the defendant to waive his right to plead not guilty").

[6] To the extent Petitioner now asserts that counsel was constitutionally deficient for failing to fully explain the elements of the offense to him,

17

In addition to the above, Petitioner's contention that defense counsel promised him that he would receive a 50% to 85% sentence reduction is flatly rejected as conflicting with: (1) Petitioner's sworn statements that no promises of leniency had been made; (2) the clear language in the plea agreement (which Petitioner swore he read and understood) stating that the filing of a sentence reduction motion was in the Government's <u>sole discretion</u>; and (3) defense counsel's email to Petitioner's family, after the plea but prior to sentencing, providing the following accurate responses to questions Petitioner asked on this subject through his family: (a) that a sentence reduction is predicated on a defendant's assistance being "substantial," meaning that the Government must be able to use it; (b) that a reduction, if any, would not likely occur at sentencing, and may

_____

such claim is similarly rejected in light of the sworn statements Petitioner made at the plea hearing. <u>See</u> ECF No. 43, at 6-7 (reflecting Petitioner's statements that he fully discussed the charges with his attorney and that he "understands the elements" that the United States would have to prove at trial); <u>Lemaster</u>, 403 F.3d at 222. Moreover, even if counsel failed to accurately discuss the elements with Petitioner, the Court properly explained the elements at the plea hearing, and thus, Petitioner fails to demonstrate prejudice. <u>See</u> <u>United States v. Foster</u>, 68 F.3d 86, 88 (4th Cir. 1995). Additionally, in light of the evidence against Petitioner and the increased sentencing exposure he would have faced if he went to trial, Petitioner fails to make a plausible showing that he would not have pled guilty if the elements had been more fully explained to him. In short, Petitioner's filings suggest that his hindsight claims attacking counsel's performance are merely a product of Petitioner's "buyer's remorse" flowing from his ten-year sentence. <u>See</u> <u>Addy v. United States</u>, No. 1:13cr57, 2014 WL 1088833, at *5 (E.D. Va. Mar. 19, 2014) (explaining that there was nothing in the record "to indicate that counsel failed to adequately represent [the] Petitioner's interests at any point during the underlying proceedings," and that "[a]s best the Court can discern, Petitioner now has buyer's remorse regarding his plea deal and ultimate sentence").

not occur until "a year or so" after sentencing; and (c) that Petitioner's desire to secure a reduction of 85-90% was unlikely, as a typical reduction is "around 35 to 50 percent," with the degree of reduction ultimately at "the discretion of the judge." ECF No. 49-1, at 13.

c.

Third, for the reasons argued by the Government, and as set forth below in Part III.D, the Court rejects Petitioner's contention that his counsel was deficient for failing to develop psychological evidence in support of a "hot air" defense seeking to demonstrate that Petitioner never intended to have sexual contact with the minor victim. Notably, controlling law establishes that such intent is not an element of the charged crime, and thus, counsel's performance was not constitutionally deficient. United States v. Engle, 676 F.3d 405, 419 (4th Cir. 2012).[7] Similarly, Petitioner's suggestion that counsel was

---

[7] Even if intent to actually engage in sexual acts with the minor were an element, there is harmful circumstantial evidence of intent that defense counsel reasonably and strategically considered when determining whether to pursue a "hot air" defense. Facebook records demonstrated that: (1) Petitioner expressed frustration at the lack of sexual contact with Jane Doe 1 during a recent in-person encounter (demonstrating both motive and that Petitioner's relationship with the victim went beyond internet-only contact); (2) Petitioner suggested both that the minor victim lose her virginity to him and masturbate while he "talked" dirty to her (and possibly film it for him); and (3) on the same day as requesting that she masturbate, Petitioner sent Jane Doe 1 (who was twelve, and half his age) a picture of his exposed and erect penis. ECF No. 37 ¶ 11.5, 13. Additionally, were this case to proceed to trial, the Government surely would have introduced the testimony of Jane Doe 1, who had informed investigating authorities that Petitioner "liked her in a sexual way . . . and wanted to have sex with

deficient for failing to recognize the absence of facts demonstrating a "knowing" commission of the crime and/or a "substantial step" toward the commission of a crime are rejected for the reasons argued by the Government. Moreover, as discussed below, even assuming that Petitioner's offense was an "attempt" crime as he now asserts, the undisputed facts demonstrate that: (1) Petitioner knowingly completed all acts necessary to be found guilty of attempted enticement; and (2) that his repeated graphic sexual communications with Jane Doe 1, his possession of sexual images/videos of other underage girls, his exchange of images with Jane Doe 1, and the evidence reflecting Jane Doe 1's belief that Petitioner wanted to have sex with her, is all the evidence that was necessary for any reasonable lawyer to conclude that a "hot air" defense had little practical chance of success, especially in a case where the child victim had in-person contact with the adult offender. ECF No. 37 ¶¶ 11.4, 11.5, 13.

### d.

Fourth, Petitioner's ineffective assistance claims regarding alleged sentencing errors fail on their face, and if anything, demonstrate effective representation. Notably, defense counsel did not wait "too long" to object to the original Guideline calculation proposed by the Probation Officer in the Presentence

---

her," and that at Petitioner's request, she had sent him "two or three pictures of her unclothed private areas (vagina)." Id. ¶ 15.

Investigation Report ("PSR"), but rather: (1) timely filed his objection in accordance with the sentencing procedures order entered in this case, ECF Nos. 23, 29; and (2) prevailed on his objection, resulting in a substantial reduction in Petitioner's advisory Guideline range, thereby likely reducing Petitioner's sentence by multiple years. Defense counsel likewise was not deficient for failing to argue "mitigating factors" in support of a sentence below 120 months, even if Petitioner instructed him to do so, as this Court lacked the authority to impose a sentence below such statutory mandatory minimum term. Counsel also could not have sought a reduction below 120 months based on Petitioner's "substantial assistance" because the Government had not filed a motion permitting the Court to deviate below the statutory minimum of 120 months. Finally, counsel was clearly not deficient for advising Petitioner not to file an appeal because, as acknowledged by Petitioner in his reply brief, not only had Petitioner waived his right to appeal, but Petitioner was at that time trying to comply with his plea agreement and cooperate with the Government in an effort to secure a sentence reduction—an eventuality with far greater prospects for success than the pursuit of a waived appeal. For all of these reasons, Petitioner fails to demonstrate that his lawyer provided constitutionally deficient performance, and his second ground for relief is therefore denied.

## 2. Prejudice

The Court has carefully reviewed each of Petitioner's numerous ineffective assistance subclaims, and finds that Petitioner also fails to demonstrate Strickland prejudice sufficient to "undermine confidence in the outcome" of any aspect of this case. Petitioner fails to demonstrate that with better communication, or improved efforts by defense counsel regarding the initial stages of the case, there is a likelihood that Petitioner either would have proceeded to trial, or entered into a more favorable plea deal that would have been accepted by the Government. Merzbacher, 706 F.3d at 366. Petitioner's arguments attacking the plea agreement negotiated by defense counsel fail to demonstrate Strickland prejudice for the same reason, as do Petitioner's arguments related to the elements of the offense and those predicated on a purported failure to pursue a psychological evaluation that, regardless of its outcome, would have been unlikely to outweigh the damaging evidence of intent/motive the Government would have presented had this case proceeded to trial.

Turning to Petitioner's sentencing arguments, defense counsel not only effectively secured the minimum sentence authorized by law, but through his negotiations with the Government, put Petitioner in a position to cooperate and receive a future sentence reduction if the information provided by Petitioner proved to be "substantial" such that it could be used by the Government in other

prosecutions. Petitioner therefore fails to demonstrate prejudice resulting from counsel's purportedly deficient performance, and his second ground for relief is alternatively denied for failure to satisfy Strickland's prejudice prong.

### C. Vindictive Prosecution

#### 1. Procedural Default

First, the Court agrees with the Government that Petitioner's third ground for relief, alleging vindictive prosecution, is defaulted as it was not previously raised in this Court or on direct appeal. Second, Petitioner fails to demonstrate "cause" excusing his procedural default. The Court again notes that Petitioner elected to enter a plea of guilty to Count Three and stipulated to all necessary facts to establish his guilt; if Petitioner believed that he was wrongfully charged as a result of prosecutorial vindictiveness, such claim should have been raised at an earlier time. See Frady, 456 U.S. at 165 (explaining that a § 2255 collateral challenge "may not do service for an appeal"). Petitioner also fails to demonstrate ineffective assistance of counsel or any other valid basis for excusing his default as to this claim. Ground Three is therefore dismissed as procedurally defaulted.

#### 2. Merits

Alternatively considering the merits of Ground Three, Petitioner fails to demonstrate that he is entitled to § 2255

relief based on his speculative allegations of prosecutorial vindictiveness. First, the Court rejects Petitioner's suggestion that Count One of the indictment, a count charging sexual exploitation of a child for which probable cause was found by the grand jury, was "baseless," as the record evidence demonstrates that: (1) Petitioner suggested through online messaging that the 12-year-old girl receiving such message masturbate while he talked dirty to her, further suggesting that she <u>film it for him</u>; (2) immediately thereafter, he sent her a photograph of his exposed and erect penis. ECF No. 37 ¶¶ 5,13.[8] While Petitioner may believe that he has a valid defense to one or more elements of such charge (which was dismissed by the Government pursuant to the negotiated plea agreement), such <u>potential</u> defense does not render the charge "baseless," nor does it suggest the charge was motivated by vindictiveness. <u>See</u> <u>United States v. Wilson</u>, 262 F.3d 305, 314 (4th Cir. 2001) (discussing a defendant's ability to prove vindictiveness without direct evidence based on "circumstances from which an improper vindictive motive may be presumed," but

_____

[8] As previously noted herein, Jane Doe 1 also told FBI investigators that Petitioner had requested, and she had previously sent him, pictures of her vagina. ECF No. 37 ¶ 15. Although it was determined that a forensic evaluation of Facebook records could not confirm that such pictures were sent and/or whether Jane Doe was under twelve when she sent such pictures, such absence of forensic evidence does not render any of the charges, or any of the Government's actions, "baseless" or otherwise improper, particularly because none of the counts in the indictment were predicted on such pictures. <u>Cf.</u> <u>United States v. Wilson</u>, 115 F.3d 1185, 1190 (4th Cir. 1997) ("[T]he uncorroborated testimony of one witness or of an accomplice may be sufficient to sustain a conviction.").

noting that such presumption "will rarely, if ever, be applied to prosecutors' pretrial decisions").

Second, Petitioner's related arguments about vindictiveness similarly lack merit. Notably, even though the record evidence supported a substantial Guideline enhancement based on an oral statement made by Jane Doe 1 regarding her age when she sent Petitioner nude pictures of herself, when the subsequent investigation revealed a lack of digital evidence to support such oral statement, far from acting in a vindictive manner, the AUSA assigned to this case indicated that she was not asking the Court to modify its prior tentative ruling in favor of Petitioner on such sentencing issue, thus essentially conceding that the sentencing enhancement would not be applied in this case. ECF No. 46, at 12-13. Moreover, the prosecution thereafter recommended the lowest sentence authorized by law.[9] Such facts cut strongly against Petitioner's speculative assertions of vindictiveness, and he has at best demonstrated that the Government prosecuted him with "earnestness and vigor." United States v. Adams, 788 F.3d 115, 116 (4th Cir. 2015) (indicating that the court "should expect some aggressiveness," from the Government because it is "obliged

---

[9] Additionally, as noted above, the Government agreed to dismiss Count One of the indictment, which had a fifteen-year mandatory minimum sentence, and allowed Petitioner to plead guilty to only Count Three, which had a ten-year mandatory minimum.

to prosecute the accused with earnestness and vigor") (quotation marks and citation omitted).

Third, Petitioner fails to demonstrate that the Government's decision not to file a Rule 35 sentence reduction motion was vindictive, as purportedly proven by the fact that an investigating agent allegedly viewed Petitioner's assistance as "substantial." Petitioner only offers hearsay evidence that the agent viewed his assistance as substantial, ECF No. 56-1, at 2, and even assuming that she did, Petitioner merely speculates that the differing viewpoint held by Government prosecutors was grounded in "vindictiveness," with record evidence actually suggesting the contrary. See ECF No. 49-1, at 13 (email from June of 2017 indicating that the information provided by Petitioner did not assist in the prosecution of other individuals); Wilson, 262 F.3d at 316 (discussing the showing necessary to prove prosecutorial vindictiveness, requiring not only proof of a "vindictive animus," but also that prosecution was pursued "solely to punish," rather than as a "proper exercise of prosecutorial discretion") (emphasis in original) (quotation marks and citation omitted). For the above stated reasons, and for those argued in greater detail in the Government's brief, Petitioner fails to demonstrate a "genuine

animus," either directly or through circumstantial evidence, and the instant claim is alternatively denied on the merits.[10]

## D. Statutory Elements not Satisfied

### 1. Procedural Default

As with preceding claims, the Government correctly asserts that Ground Four is defaulted as it was not previously raised in this Court or on direct appeal. Petitioner fails to demonstrate "cause" excusing his procedural default or resulting prejudice. Again, Petitioner did not proceed to trial, but instead pled guilty to the very charge that he now asserts the evidence was insufficient to establish, and to the extent that Petitioner seeks to blame his counsel for his failure to understand the elements, Petitioner fails to demonstrate cause or prejudice under Strickland. Petitioner also fails to demonstrate "actual factual" innocence. Accordingly, Ground Four is dismissed as procedurally defaulted.

---

[10] Petitioner also argues, supported by an affidavit from his father attached to his reply brief, that a different Government agent committed perjury during questioning by the Court on an issue relevant to sentencing. Such claim, even if true, fails to demonstrate that Petitioner was subject to "vindictive" prosecution and/or that he is otherwise entitled to habeas relief. Importantly, even assuming, arguendo, that such agent made a false statement while under oath in an effort to increase the Guideline range applicable to Petitioner, investigating agents do not make the decision to prosecute a criminal target, nor do they decide what plea terms to offer. Moreover, the enhancement that the agent purportedly sought to apply through her allegedly false statement was rejected by the Court, and Petitioner received the lowest sentence authorized by law. The Court likewise rejects Petitioner's related contention that improper motives are illustrated by the fact that the same testifying agent relayed "3rd party testimony" at sentencing as the Government is permitted to introduce hearsay at sentencing. United States v. Powell, 650 F.3d 388, 392 (4th Cir. 2011).

## 2. Merits

Alternatively considering the merits of Ground Four, Petitioner fails to demonstrate that the record evidence is insufficient to meet the statutory requirements of the offense of conviction. Petitioner alleges that the Government's evidence is insufficient to demonstrate that he "knowingly" committed the crime of enticement, which he asserts requires both "culpable intent" and that he committed a "substantial step" toward completion of the crime, relying on United States v. Clarke, 842 F.3d 288, 297 (4th Cir. 2016). It should be noted, however, that the Fourth Circuit's cited discussion in Clarke was offered in the context of defining the elements of an "attempted" violation of § 2422(b). In that case, the defendant was communicating with an undercover agent posing as a parent willing to allow the sexual abuse of his two fictitious children, and thus, the defendant attempted, but never completed, the crime of coercion or enticement. Id. at 292, 297.

In contrast here, the record reveals that Petitioner pled guilty to the completed crime of violating § 2422(b) through his online contact with an actual minor as he enticed such minor to engage in unlawful sexual activity for which any person can be charged with a criminal offense. Notably, as the Magistrate Judge expressly reviewed with Petitioner at his guilty plea, ECF No. 43, at 7, and as further reflected in the sworn Statement of Facts,

ECF No. 21 ¶ 10, the "criminal offense" that Petitioner enticed the victim to participate in was repeated sexual communications where he proposed, with lascivious intent, to a child under age 15, to perform an act of sexual intercourse, in violation of Va. Code § 18.2-370(A)(4). Accordingly, Petitioner's legal argument is misplaced, as the content of the messages sent by Petitioner to an actual twelve-year-old minor establish the necessary elements of the completed crime of enticing such minor to participate in sexually explicit conversations where he "graphically described proposed sexual encounters," including sexual intercourse, between himself and Jane Doe 1. ECF No. 37 ¶ 11.5.

Alternatively, even if there were some defect in the Government's evidence regarding Petitioner's "completion" of § 2422(b) enticement in reliance on a cross-reference to Va. Code § 18.2-370(A)(4), Petitioner cannot demonstrate that he is factually innocent of a § 2422(b) violation (and/or that he suffered prejudice under Strickland). Importantly, here, the unchallenged record evidence demonstrates that Petitioner completed additional acts of enticement in violation of § 2422(b), as cross referenced to Va. Code § 18.2-370 subsections (A)(1) and (A)(3) though: (1) exposing his genitals to a minor under age 15; (2) proposing that "such child feel or fondle [her] own sexual or

genital parts"; and (3) based on Jane Doe 1's statement, successfully soliciting pictures of Jane Doe 1's exposed vagina.[11]

Moreover, even if the Court further assumes that Petitioner is correct in asserting that the charge against him was actually an "attempt" crime requiring both "culpable intent" and a "substantial step," the evidence is sufficient to establish both such requirements under the law of this Circuit. First, Petitioner's Facebook messages to the minor on April 7, 2015, the date charged in Count Three of the indictment, graphically described proposed sexual encounters and the pleasure that the twelve-year-old victim would achieve if she had sexual intercourse with Petitioner. ECF No. 21 ¶ 9. Petitioner also admitted to suggesting to such victim that she lose her virginity to him, and expressed frustration at his inability to engage in sexual activity

_____

[11] At sentencing, Petitioner successfully challenged Jane Doe 1's statements regarding the timing of certain online sexual conversations, but he never expressly disputed the accuracy of Jane Doe 1's statements in the PSR indicating that she had sent him pictures of her vagina, and such facts remain in the final version of the PSR. ECF No. 37 ¶ 15. See Fugit, 703 F.3d at 256-58 (considering both the stipulated information in the Statement of Facts and the unchallenged facts in the PSR when conducting an "actual innocence" inquiry). Additionally, it is undisputed that Petitioner sent Jane Doe 1 at least one picture of his erect penis, and that, contrary to Jane Doe's recollection, he did in fact ask her to masturbate. Subsection (A)(1) of Virginia Code § 18.2-370 criminalizes an adult exposing his or her genital parts to any child under age 15 as well as propositioning a child to expose his or her genital parts to such adult. Subsection (A)(3) criminalizes a proposal that the child feel or fondle his or her own genital parts. In Hillman v. Commonwealth, 68 Va. App. 585, 593-94, 811 S.E.2d 853, 857 (2018), the Court rejected the defendant's argument that he did not "expose" himself to a minor within the meaning of § 18.2-370 because he was never in the physical presence of the minor, instead finding that the "plain meaning" of the statutory term "expose" included "sen[ding] photographs of his genitals to [the minor] via Snapchat."

with her during a recent visit.  Id. ¶ 5.  The Fourth Circuit has

made clear that "[i]n enacting Section 2422(b), Congress intended

'to criminalize persuasion and the attempt to persuade, not [just]

the performance of the sexual acts themselves.'" Clarke, 842 F.3d

at 297 (second alternation in original) (quoting Engle, 676 F.3d

at 419).  Here, the content and context of Petitioner's ongoing

online communications with a twelve-year-old girl on multiple days

throughout early 2015, to include discussions about her losing her

virginity to Petitioner, demonstrate the requisite "culpable

intent" to knowingly attempt to convince the minor to achieve the

mental state of assenting to his sexual proposals, even if he never

formed the intent to actually carry through with the in-person

sexual acts.  See Engle, 676 F.3d at 419 (explaining that § 2422(b)

criminalizes intentional attempts to obtain a minor's "assent" to

engage in unlawful sexual activities regardless of the defendant's

intentions to engage in the proposed sex acts).  Stated

differently, there was clearly sufficient evidence for a

factfinder to conclude that Petitioner had the culpable intent to

convince the twelve-year-old minor to at least "say yes" to his

repeated sexual propositions, even if he did not intend to actually

consummate the sexual contact with such minor.[12]

_____

[12] Additionally, the record is sufficient to demonstrate that Petitioner had
the culpable intent to entice the minor to "feel or fondle herself" while
he talked dirty to her.  To the extent Petitioner might counter that he was
"just kidding" when asking her to do this, such "hot air" defense lost any

31

As to the requirement for a "substantial step," Petitioner seeks to rely on an out-of-circuit case to demonstrate that an active step beyond internet communication is required to prove such element.  See United States v. Gladish, 536 F.3d 646, 650 (7th Cir. 2008).  However, this Court finds that the controlling law of this Circuit demonstrates otherwise, as the Fourth Circuit has explained as follows:

> This court has made clear that § 2422(b) "was designed to protect children from the act of solicitation itself." United States v. Engle, 676 F.3d 405, 419 (4th Cir.2012) (quoting United States v. Hughes, 632 F.3d 956, 961 (6th Cir. 2011)). Consequently, by forbidding the knowing persuasion, inducement, enticement, or coercion of a minor, the statute "criminalizes an intentional attempt to achieve a mental state—a minor's assent—regardless of the accused's intentions concerning the actual consummation of sexual activities with the minor." Id. (quoting United States v. Berk, 652 F.3d 132, 140 (1st Cir. 2011)). The primary evil that Congress meant to avert by enacting § 2422(b) was the psychological sexualization of children, and this evil can surely obtain in situations where the contemplated conduct does not involve interpersonal physical contact.

United States v. Fugit, 703 F.3d 248, 255 (4th Cir. 2012) (first emphasis in original). Because the minimum required "goal" of a § 2422(b) enticement crime, as defined by the Fourth Circuit, is for the perpetrator to succeed in altering the minor's mental state and secure his or her assent, online communications alone can be

---

viable chance of success the moment the twenty-five-year-old adult sent a picture of his exposed and erect penis to a twelve-year-old girl.

sufficient to constitute the necessary substantial step.  See

Engle, 676 F.3d at 423.[13]

Here, by the time Petitioner engaged in the conduct charged

in Count Three, he had already asked the child victim to masturbate

for him, potentially video it for him, and then sent her a picture

---

[13] Petitioner relies on Gladish for the proposition that a defendant cannot
be convicted of a § 2422(b) offense based solely on "hot air"; that is,
internet speech rarely rises to the level of the "substantial step" necessary
to violate § 2422(b).   The Seventh Circuit posits that the "substantial
step" necessary for an attempted violation of § 2422(b) requires something
more than sexual banter, most commonly taking the form of making arrangements
to meet the minor to engage in the sexual act (agreeing on a time and place,
making a hotel reservation, buying a ticket to travel, etc.) as such step
shows that the defendant "made his move."  Even assuming that Petitioner's
crime was an "attempt" crime requiring the Government to prove a "substantial
step," this Court finds Petitioner's argument unconvincing in the context
of the instant post-plea collateral challenge to the sufficiency of the
evidence for two reasons: (1) case law from within this Circuit establishes
that internet communications alone can constitute the "substantial step"
necessary to prove an attempted violation of § 2422(b), Engle, 676 F.3d at
423; and (2) the case law relied on by Petitioner addressed the "substantial
step" necessary in order to entice a victim to engage in actual person-to-
person sexual contact, as contrasted with illegal online sexual conduct.
As to such second point, here, Petitioner's communications with the minor
included an effort to convince the child to send pictures of her vagina and
masturbate while he "talked" dirty to her, and no further "arrangements"
regarding a meeting place were necessary in order for her to actually engage
in such unlawful conduct. Moreover, even if "words alone" were categorically
insufficient    to    constitute    a    "substantial    step"    in    this    Circuit,
Petitioner's submission of a photograph of his exposed and erect penis to
the twelve-year-old minor is an act beyond mere words demonstrating that he
"made his move" to entice the minor (who had previously sent him pictures
of her vagina) to actually masturbate, an act that would violate § 18.2-
370(C) of the Virginia Code, or at a minimum, made his move to entice her
to "say yes" to his sexual requests that she masturbate in order to use such
assent to further his own sexual gratification. Cf. United States v. Kaye,
451 F. Supp. 2d 775, 787 (E.D. Va. 2006) (identifying four circumstances,
each of which "would likely be sufficient . . . to constitute a substantial
step" in a § 2422(b) case: "(1) sexual dialog between Defendant and the
'minor'; (2) repeated references to what would be performed upon meeting
the minor; (3) the transmission of a sexually suggestive photograph; and
(4) travel by Defendant to meet the minor").   Petitioner's citation to
Gladish is therefore insufficient to demonstrate that § 2255 relief is
appropriate in this case.

of his exposed and erect penis. Moreover, considering Jane Doe 1's oral statement to investigators regarding her online relationship with Petitioner, he had also solicited, and received, more than one picture of Jane Doe's exposed vagina. Accordingly, the record evidence in this case demonstrates a "substantial step" taken in order to secure the child's assent, as evidenced through Petitioner's repeated acts of "psychological sexualization" of a child in furtherance of his "active pursuit of libidinal gratification."[14]  Fugit, 703 F.3d at 255.  To the extent any further evidence was necessary to demonstrate that the internet exchanges were more than "hot air," and/or that the minor's "assent" was sexually important to Petitioner, such evidence is established by the fact that Petitioner sent Jane Doe 1 a photograph of his exposed and erect penis immediately after propositioning her.

Although Petitioner continues to argue that "NO CRIME OCCURRED" because he was merely engaging in online discussions about sexual fantasies with a minor with no intent to act on his graphic sexual propositions, ECF No. 68, at 4, such pleas of innocence fail to accurately reflect the contours of controlling

---

[14] Petitioner's contention that Jane Doe 1's online statements to him, indicating that he could "say whatever [he] want[s], [she] won't say anything" and/or that she initially contacted him online because she "likes to play tricks on older guys," gave him cart blanche to graphically describe sexual encounters and exchange nude images with a twelve-year-old without any legal repercussions, fails on its face. ECF No. 56, 12-13, ECF No. 68, at 4.

federal law. Notably, in <u>Fugit</u>, the Fourth Circuit expressly rejected the defendant's contention that "absent an interpersonal physical contact requirement, § 2422(b) becomes a trap capable of snaring all sorts of innocent behavior," explaining that "§ 2422(b) concerns only conduct that is already criminally prohibited," as contrasted with "conduct that is innocuous, ambiguous, or merely flirtatious." <u>Fugit</u>, 703 F.3d at 255. As in <u>Fugit</u>, here, the <u>illegal</u> "sexual activity" that Petitioner enticed the minor to engage in was plainly connected with Petitioner's "active pursuit of libidinal gratification" as best illustrated by Petitioner sharing a photograph of his erect penis at the conclusion of one of the online sexual chats. <u>Id.</u> For all of the above reasons, Ground Four is alternatively denied on the merits.[15]

---

[15] Petitioner's § 2255 motion also asserts that his conviction violates his "First Amendment Rights," ECF No. 39, at 7, although such claim is not later discussed in any detail in his memo/supplement to his original § 2255 motion. To the extent Petitioner is still pursuing such claim, it is rejected for the reasons argued in greater detail in the Government's brief in opposition, to include the fact that such claim is both defaulted and is a nonjurisdictional claim waived by Petitioner's guilty plea. Additionally, federal appellate precedent demonstrates that a First Amendment violation does not occur when the Government regulates speech intended to arrange the sexual abuse of children and/or to attempt to persuade children to engage in sexual acts. <u>See</u> <u>United States v. Howard</u>, 766 F.3d 414, 429-30 (5th Cir. 2014); <u>United States v. Hart</u>, 635 F.3d 850, 857-58 (6th Cir. 2011); <u>United States v. Dwinells</u>, 508 F.3d 63, 70-72 (1st Cir. 2007); <u>see also</u> <u>Podracky v. Com.</u>, 52 Va. App. 130, 141-43, 662 S.E.2d 81, 87-88 (2008) (rejecting a defendant's First Amendment claim challenging a prior version of Virginia Code § 18.2-374.3(B), which criminalized using "a communications system" to solicit a minor to engage in various sexual activities that violate any one of several cross-referenced sections of the Virginia Code).

### E. Double Jeopardy

### 1. Procedural Default

As with several preceding claims, the Government correctly asserts that Petitioner's fifth ground for relief is defaulted as it was not previously raised in this Court or on direct appeal. Petitioner fails to demonstrate "cause" excusing his procedural default, or resulting prejudice. He also fails to demonstrate ineffective assistance of counsel or any other valid basis for excusing his procedural default. Accordingly, Ground Five is dismissed.

### 2. Merits

Alternatively considering the merits of Ground Five, Petitioner offers no valid argument that a "double jeopardy" violation occurred through the application of a Guideline enhancement for "use of a computer" in a case where the offense of conviction already required the use of an instrumentality of interstate commerce. First, sentencing enhancements under the advisory Guidelines are not subject to being unconstitutional violations of the double jeopardy clause. See United States v. Fitzgerald, 435 F.3d 484, 487 (4th Cir. 2006) ("The Supreme Court has '[h]istorically . . . found double jeopardy protections inapplicable to sentencing proceedings' and has refused to construe sentence enhancements as additional punishments." (quoting Monge v. California, 524 U.S. 721, 728 (1998)))

(alteration in original). Second, not only is the Guideline provision at issue applicable to multiple statutes, but even if it were applicable only to violations of § 2422(b), the additional punishment for "use of a computer" does not violate double jeopardy, or even constitute "double counting" under the Guidelines, because there are non-computer facilities of interstate commerce that could be used to violate such statute. Third, even if the computer enhancement constituted "double counting" under the Guidelines, "[d]ouble counting is generally authorized unless the Guidelines expressly prohibit it." United States v. Reevey, 364 F.3d 151, 158 (4th Cir. 2004). Fourth and finally, even assuming that such enhancement constituted improper double counting, it had no bearing on the outcome of Petitioner's case, as: (1) the high-end of the sentencing range recommended by the Guidelines with the inclusion of the computer enhancement was still less than the statutory mandatory minimum; and (2) the statutory mandatory minimum sentence was imposed by this Court. Ground Five is therefore alternatively denied on the merits.

### F. Warrants Illegally Obtained

#### 1. Procedural Default

As with all preceding claims other than Ground Two, the Government correctly asserts that Petitioner's sixth ground for relief, which asserts that the search of Petitioner's Facebook account was unconstitutional, is defaulted as it was not previously

37

raised in this Court or on direct appeal. Petitioner fails to demonstrate "cause" excusing his procedural default or resulting prejudice. He further fails to demonstrate ineffective assistance of counsel or any other valid basis for excusing his default. Accordingly, Ground Six is dismissed as procedurally defaulted.

## 2. Merits

Alternatively considering the merits of Ground Six, even if such claim were raised on appeal, it would have been dismissed as waived and/or alternatively denied on the merits. First, such claim alleges a non-jurisdictional constitutional violation based on pre-plea events regarding the scope of the warrant used to search Petitioner's Facebook account, and "[w]hen a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010) (citation omitted).[16] Accordingly, such claim is denied because Petitioner's valid guilty plea "render[ed] irrelevant . . . the constitutionality of case-related government conduct that [took] place before the plea [was] entered." Class v. United States, 138 S. Ct. 798, 805 (2018).

---

[16] This issue was also squarely addressed at Petitioner's plea hearing, and he affirmatively stated, under oath, that he did not "believe that any of [his] constitutional rights have been violated in any way in connection with the seizure of any physical or tangible evidence from [him] by any police or law enforcement agent, federal or state." ECF No. 43, at 15.

Second, Petitioner's original § 2255 argument on this issue was that the Facebook investigation into Petitioner's involvement with Jane Doe 1 was improper because there was no evidence that Petitioner engaged in illegal behavior with Jane Doe 2, a second child victim that Petitioner was communicating with online in early 2015 who was the subject of the state search warrant in this case. However, as outlined in the Government's brief, Petitioner admitted in his sworn Statement of Facts that Facebook records reveal that Petitioner exchanged messages with the minor referred to as Jane Doe 2 that "included graphic descriptions of proposed sexual encounters between the two." ECF No. 21 ¶ 3. Accordingly, Petitioner's § 2255 argument lacks merit as it is based on a false factual predicate that contradicts Petitioner's prior sworn admissions.

Third, in his reply brief, Petitioner shifts course somewhat, arguing that the Government lacked constitutional authority to look at any of his Facebook records other than those messages specific to Jane Doe 2. Petitioner cites no authority for such narrow view on the permissible scope of a warrant, nor is this Court aware of any authority that would support it. Moreover, even assuming that such modified reply-brief argument is properly before the Court, Petitioner's communications with Jane Doe 1 and Jane Doe 2 were occurring during the precise same timeframe (January through April of 2015) and both occurred through

Petitioner's use of "Facebook Messenger." Accordingly, the Court rejects as meritless Petitioner's alternative argument that it was an overbroad and unconstitutional "fishing expedition" for investigators to request "the Facebook Account of Dylan Allen Jefferies," ECF No. 56-2, and/or to later review the entirety of Petitioner's early 2015 Facebook activity after the warrant was issued. Ground Six is therefore alternatively denied on the merits.

## G. Sentencing Error - Mandatory Minimum Departure

### 1. Procedural Default

As with preceding claims, the Government correctly categorizes Petitioner's seventh ground for relief as a claim that is procedurally defaulted. Petitioner fails to demonstrate "cause" excusing his default or resulting prejudice. He further fails to demonstrate ineffective assistance of counsel at sentencing or any other valid basis for excusing his default. Accordingly, Ground Seven is dismissed as procedurally defaulted.

### 2. Merits

Alternatively considering the merits of Ground Seven, even if such claim were properly before this Court, it would fail on its face. Importantly, absent a cooperation motion filed by the Government pursuant to 18 U.S.C. § 3553(e), this Court lacked authority to sentence Petitioner below the 120-month minimum sentence required under United States statute. As noted above,

such minimum was explained to Petitioner in open court at the time of his plea, and he indicated that he understood that the Court would impose a sentence of at least ten years.

Petitioner's recent post-sentencing assertions that this Court should have considered, and/or imposed, a sentence below such statutory threshold based on "mitigating" sentencing factors, or the fact that Petitioner's unrestricted advisory Guideline range was less than ten years, are flawed as a matter of law. See 18 U.S.C. § 2422(b) (establishing a statutory punishment of "not less than 10 years"); U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.") (emphasis added).[17] Ground Seven is therefore alternatively denied on the merits.

## H. Supplement—Actual Innocence due to "Switched" Pseudonym

### 1. Timeliness

As noted in the introduction to this Opinion and Order, the Court previously granted Petitioner leave to file a supplemental § 2255 claim, but in doing so, expressly indicated that allowing such supplement did not resolve the issue of timeliness. In the Government's supplemental response to Petitioner's newly added claim, it expressly challenges the timelines of Petitioner's new

---

[17] As previously discussed, defense counsel was plainly not deficient for failing to ask this Court to exercise discretion that it simply does not possess under the laws of the United States.

submission. The controlling statute establishes a one-year period for filing a § 2255 claim, with the period typically beginning on the date a defendant's conviction and sentence becomes final. 28 U.S.C. § 2255(f)(1). Here, the record demonstrates that Petitioner's "Ground Eight" was submitted more than one year and nine months after his conviction and sentence became final.

As recognized by the Fourth Circuit, facially time-barred[18] amendments to a § 2255 motion "relate back" to the original motion when "'the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading.'" United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (quoting the version of Fed. R. Civ. P. 15(c)(2) in effect at that time) (alteration in original). However, when defining the scope of the phrase "conduct, transaction, or occurrence," the Fourth Circuit expressly rejected a broad interpretation that would include an entire trial or sentencing proceeding. Id. at 317-18. Rather, as explained by another judge of this Court

> An amended claim "does not relate back (and thereby escape [§ 2255(f)'s] one-year time limit) when it asserts a new ground for relief supported by facts that

---

[18] Petitioner fails to demonstrate in his supplemental reply brief that any of the "alternative" statutory triggers for the one-year time period apply in this case, and a review of the record confirms the same. The only potentially applicable alternative period, which turns on "the date on which the fact supporting the claim . . . could have been discovered through the exercise of due diligence," 28 U.S.C. § 2255(f)(4), does not save Petitioner's newly advanced claim as the facts he now invokes were available to the defense prior to Petitioner's sentencing hearing.

42

differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). . . . . Thus, "a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) (citing Davenport v. United States, 217 F.3d 1341, 1346 (11th Cir. 2000); see also United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999)).

United States v. Tucker, No. 3:09cr298, 2015 WL 1649123, at *9 (E.D. Va. Apr. 13, 2015).

Here, the Court has little difficulty in concluding that Ground Eight raises an independent claim for relief that does not relate back to Petitioner's prior claims. While it is true that Petitioner's original § 2255 motion asserts that he is not guilty of Count Three, he has now advanced an entirely new legal theory of innocence predicated on the pre-indictment investigation that is different in time and type from his original arguments. Specifically, Petitioner now asserts that because investigating authorities at some point "switched" which minor they were referring to with the pseudonym "Jane Doe 1," the Government never proved Petitioner's guilt. Such newly formulated theory of relief is untimely, and it is therefore dismissed.

## 2. Waiver

Even assuming that Petitioner's Eighth Claim were timely filed, the Government correctly asserts that such claim should be

dismissed by this Court as "waived." As discussed above in Part III.F.2, Petitioner's guilty plea rendered irrelevant "the constitutionality of case-related government conduct that [took] place before the plea [was] entered." Class, 138 S. Ct. at 805. To the extent that Petitioner seeks to establish that his guilty plea was not knowingly made as a result of confusion about the identity of the victims, such argument is rejected as: (1) there is no record evidence of any confusion; (2) Petitioner admits that he only recently discovered the pre-indictment reversal of pseudonyms; and (3) the same minor was consistently referred to as "Jane Doe 1" in all post-indictment case documents and she was further identified as being Petitioner's "relative." ECF No. 21 ¶ 4. Accordingly, Count Eight is alternatively dismissed as waived.

### 3. Procedural Default

Even if Petitioner's claim is timely and not waived by Petitioner's guilty plea, it is procedurally defaulted as it was not previously raised in this Court or on direct appeal. Petitioner fails to demonstrate "cause" or "prejudice" excusing his procedural default, and although he appears to assert that his claim should be considered because he is "actually innocent," Petitioner offers only a technical attack on the pseudonym used to refer to the Count Three victim (the identity of whom is well-known to the defense, particularly in light of her designation as

Petitioner's relative). Petitioner therefore fails to demonstrate "factual innocence." Bousley v. United States, 523 U.S. 614, 623 (1998). Such claim is therefore alternatively dismissed as defaulted.

### 4. Merits

Even assuming that all of the above defects are ignored, Petitioner's eighth ground is denied on the merits as a futile hindsight attempt to create confusion among identities in a case where there was none. The Government acknowledges that the child victim referred to in the indictment as "Jane Doe 1" had been referred to as "Jane Doe 2" during the pre-indictment investigation because she was the second-in-time victim to be discovered. However, when it came time to present their case to the Grand Jury, the Government referred to such child victim as "Jane Doe 1" as she was the only victim associated with the charges being presented to the Grand Jury. The fact that the parties subsequently referred to the first-in-time victim as "Jane Doe 2" when drafting the Statement of Facts in order to distinguish her from the victim who was the subject of all three charges was eminently reasonable. While Petitioner has now, with the benefit of nearly two years post-sentencing, identified a single inconsistent use of the moniker "Jane Doe 1" in a pre-indictment warrant, his contention that the use of such phrase "became record" and invalidated all subsequent criminal proceedings, including his conviction based on

a guilty plea, is facially meritless. There is no evidence in the record that the identity of these two victims was ever confused or unknown to Petitioner or the defense, and his post-conviction efforts to manufacture confusion are rejected by the Court.[19] Accordingly, Petitioner's eighth claim is denied on the merits.

## I. Discussion Summary

Summarizing the above findings at a macro level, Petitioner's § 2255 filings, and related motions and submissions, suggest that Petitioner, dissatisfied with his ultimate sentence, seeks a "second bite at the apple" to relitigate his federal case so that he can pursue one or more previously abandoned defense theories. However, stated simply, a § 2255 motion does not present the opportunity for a prisoner dissatisfied with the outcome of his now-final conviction and sentence to "retry" his case after previously admitting his guilt. Contrary to Petitioner's suggestion, the evidence in this case demonstrates that defense counsel's encouragement that Petitioner plead guilty was sound advice in light of both the record evidence and the potential sentencing exposure had this matter proceeded to trial. Cf. Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1299 (4th Cir.

---

[19] Petitioner, in an effort to demonstrate that his supplemental claim was timely, recently asserted that he was actually unaware that the monikers had been "switched" until sometime in 2018. ECF No. 68, at 6-7. Such assertion further demonstrates the complete absence of confusion in this case regarding the minor's identity based on the information in the indictment, discovery materials, and statement of facts.

1992) (noting that the "voluntary and intelligent character of [the defendant's] plea bargain is further evidenced by the fact that the plea agreement was favorable to him and accepting it was a reasonable and prudent decision," in light of the "punitive exposure, had he been convicted at trial"). While it appears to the Court that both Petitioner and his family believe that Petitioner's conviction and sentence are somehow unjust, the critical criminal act that ultimately led to such conviction was not committed by defense counsel, the prosecutors, or the Court, but rather, by Petitioner when he knowingly and repeatedly used a twelve-year-old relative for his own sexual gratification.

## IV. CONCLUSION

For the forgoing reasons, Petitioner's § 2255 motion, to include the eighth ground added through a supplemental filing, is **DISMISSED** and **DENIED**. ECF No. 39, 59-3. Additionally, Petitioner's motion seeking summary judgment, ECF No. 58, is **DENIED**. Petitioner's recently filed motion seeking a status update and motion for release on bond pending resolution of his § 2255 motion are **DISMISSED** as moot, with the later motion seeking release alternatively **DENIED** on the merits. ECF No. 70, 71.

Finding that the procedural basis for dismissal of Petitioner's § 2255 motion is not debatable, and alternatively finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability

as to Petitioner's § 2255 motion is **DENIED**. 28 U.S.C. § 2253(c)(2); see R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, he must do so **within sixty (60) days** from the date of this Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, to Petitioner's former counsel, and to the United States Attorney's Office in Newport News, Virginia.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 9 , 2018